# EXHIBIT 3

Electronically FILED by Superior Court of California, County of Riverside on 10/08/2024 03:03 PM
Case Number CVRI2405748 0000107541344 - Jason B. Galkin, Executive Officer/Clerk of the Court By Janelle Blackwell, Clerk

1 | Bruce G. Fagel, SBN 103674
**LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES**
2 | 9200 West Sunset Boulevard, Suite 670
West Hollywood, California 90069
3 | Tel: (310) 516-9035
Fax: (310) 928-7763
4 |
Attorneys for Plaintiff, ADRIA SNOVER,
5 | by and through her Guardian ad Litem JORDAN CALLIHAN

6 | Marshall Silberberg, SBN 58303
William S. Collins, SBN 289877
7 | **LAW OFFICES OF MARSHALL SILBERBERG**
3121 Michelson Drive, Suite 525
8 | Irvine, CA 92612
Telephone:    (949) 718-0960
9 | Facsimile:    (949) 266-5811

10 | Attorneys for Plaintiff, ARUNA GUPTA, M.D.

11 |
Joseph Di Monda SBN 184640
12 | **ANGELO & DI MONDA**
3121 Michelson Drive, Suite 525
13 | Irvine, CA 92612
Telephone:    (310) 213-3554
14 | Facsimile:    (949) 266-5811

15 | Attorneys for Plaintiff, ARUNA GUPTA, M.D.

16 |
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
17 | IN AND FOR THE COUNTY OF RIVERSIDE

18 | ADRIA SNOVER, by and through her Guardian ad ) CASE NO.:   CVRI2405748
Litem JORDAN CALLIHAN; and, ARUNA )
19 | GUPTA, M.D., ) Judge:
) Dept.:
20 | Plaintiffs, )
) **COMPLAINT FOR:**
21 | v. )
) **1)    BREACH OF THE IMPLIED**
22 |  CARE PROFESSIONAL LIABILITY ) **COVENANT OF GOOD FAITH AND**
ASSOCIATION, LLC, a Kentucky company, ) **FAIR DEALING;**
23 | DOES 1 through 50 inclusive, ) **2)    BREACH OF WRITTEN CONTRACT**
) **3)    FRAUD**
24 | Defendants. ) **4)    DECLARATORY RELIEF**
)
25 | _____ ) Demand for Jury Trial

26 |
        Plaintiffs Aruna Gupta, M.D. and Assignee and Judgment Creditor Adria Snover, by and through
27 |
her guardian ad litem Jordan Callihan complain and allege as follows:
28 |
///

1
**COMPLAINT**

**THE PARTIES**

1. At all times relevant herein, Plaintiff Aruna Gupta, M.D. (Gupta) was and is a physician licensed in the State of California and a resident of Riverside County, State of California.

2. At all times relevant herein, Plaintiff Adria Snover (Snover), by and through her guardian ad litem Jordan Callihan, was and is a resident of Riverside County, State of California and an assignee of Aruna Gupta's bad faith rights to sue her insurers for the overlimits judgment.

3. At all times relevant herein, defendant CARE Professional Liability Association, LLC. (CARE, LLC ), was and is a Limited Liability Company existing under the laws of the State of Kentucky, doing business in California, and was and is the parent company of insurer CARE Risk Retention Group, Inc. (CARE INC).  Service of process on CARE LLC may be made on the California Department of Insurance.

4. CARE INC is owned by CARE LLC, or is a subsidiary or a captive insurer of CARE LLC.

5. As more fully alleged hereinbelow, CARE LLC is the alter ego of CARE INC.

6. Plaintiffs are unaware of the true names and/or capacities of the Defendants fictitiously designated herein as DOES 1-50 inclusive.  However, Plaintiffs are informed and believe and based thereon alleges, that each of the fictitiously designated Defendants are responsible in some manner and liable by reason of that responsibility for the injuries and damages alleged by Plaintiffs herein.  Plaintiffs will seek leave to amend this Complaint when the true name and/or capacities of such fictitiously designated Defendants are ascertained.

7. Plaintiffs are informed and believe and on that basis alleges that each of the Defendants herein at times was the agent and/or employee of the others, and each such Defendant was acting within the scope of said agency and/or employment when doing the specific acts on behalf of other Defendants alleged herein.

**INTRODUCTION**

8. Gupta, is a obstetrician-gynecologist (OBGYN) licensed by the State of California and was Snover's OBGYN.

9. At all times relevant herein, Gupta had a written Professional Liability Insurance Policy issued by CARE INC (the Policy), Policy number PPL0500392. CARE INC is a wholly owned subsidiary of CARE LLC, which has all assets for CARE INC.  At all times relevant herein, said Policy was in

2

**COMPLAINT**

1    full force and effect and was sold, delivered and issued in California.  See Policy attached as

2    Exhibit 1.

3   10.   The Policy provided coverage for Gupta for professional negligence, defined in the Policy as an

4    "Occurrence," with Policy Limits of $1,000, 000.00.  The Policy is an eroding limit policy, also

5    known as a "burning limits policy," in which every dollar of defense costs and fees, reduces the

6    liability limit by the same amount. Meaning that the longer the case is litigated, the lower the

7    indemnity limits available to settle, and the greater the risk of an excess judgment exposing the

8    insured to personal liability.  This type of burning limits policy places a higher duty on CARE INC

9    and CARE LLC (collectively "the CARE Entities") to accept reasonable settlement demands

10    within policy limits from claimants.

11   11.   According to CARE INC, in order to obtain the Policy, Gupta was compelled to become a member

12    of CARE LLC.  According to CARE INC, becoming a member of CARE LLC was, and is, a

13    condition of obtaining insurance from CARE INC.

14   12.   Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto,

15    Gregory Cook, was and is the President and CEO of CARE LLC and the Director and Board of

16    Directors Member of CARE, Inc**.**

17   13.   Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto, Dr.

18    Robert G. Pope, was and is the Co-Founder, Operating Manager and Director of CARE LLP and

19    President and Chairman of the Board for the CARE Entities.

20   14.   Both CARE, LLP and CARE INC have the same business address located at 13109 Eastpoint Park

21    Blvd. Louisville, KY 40223.

22   15.   Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto David

23    Prisco was and is the Director of Claims for CARE LLC and CARE INC and the person who

24    adjusted the claim against Gupta and solely responsible for making all settlement recommendations

25    to CARE INC's Settlement Committee.

26   16.   Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto David

27    Prisco and Gregory Cook were and are both members of CARE INC's Settlement Committee that

28    made the settlement decisions for the Gupta claim..

  17.   Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto CARE

**COMPLAINT**

1    INC was and is a captive insurance company, owned and controlled by CARE LLC, Gregory Cook

2    and Dr. Robert G. Pope with David Prisco in charge of handling and settling all claims.

3  18.  Plaintiff is informed and believes, and on that basis alleges, that the CARE Entities share many of

4    the same employees and shareholders.

5  19.  Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto all

6    profits from CARE INC are transferred to CARE LLC leaving CARE INC without sufficient assets

7    to carry on the business and meet reasonably anticipated indemnity needs, indemnify Claims, or to

8    pay any judgment above insurance policy limits against CARE INC, thereby effectively insulating

9    both CARE INC and CARE LLC from ever having to pay any bad faith judgment that an insured,

10    or its assignee, may obtain against CARE INC.

11  20.  Plaintiff is informed and believes, and on that basis alleges, that CARE LLC and its owners strip

12    CARE INC of its assets that are necessary to meet its reasonably foreseeable debt obligations,

13    including bad faith judgments against it, thereby stripping CARE INC of its assets and reducing

14    CARE INC's funding to the bare minimum required by law.

15  21.  Defense Costs are defined in the Policy as "all reasonable and necessary fees, costs, and expenses

16    incurred by us in the investigation and defense of any covered Claim." Defense Costs are not

17    defined as being "attorneys fees."

18  22.  Attorneys fees are never mentioned in the Policy as reducing the indemnity limits.

19  23.  Implied by law in the Policy was a covenant by CARE INC that it would act in good faith and deal

20    fairly with Gupta and that it would do nothing to interfere with her rights to receive the benefits of

21    the agreement.

22  24.  Implied by law in the Policy, was a covenant by CARE INC that it would act in good faith and deal

23    fairly with Gupta and that it would do nothing to reduce the financial reserves it would maintain to

24    fall below an amount that would make CARE INC unable to fulfill its indemnity obligations to

25    Gupta.

26  25.  The Policy specifically covered the acts alleged in the Medical Malpractice action and further

27    promised to "defend any CLAIM."

28  26.  The Policy promised not to settle any CLAIM without Gupta's consent and also prevented Gupta

    from settling without the CARE entities' consent. However, the Policy states that CARE INC's

4

**COMPLAINT**

1 consent to settlement "shall not be unreasonably withheld."

2 27. As a consequence of the issuance of the Policy, the relationship of insurer and insured was created

3 between Gupta and the CARE Entities.  This relationship gave rise to an implied covenant of good

4 faith and fair dealing owed on the part of the CARE Entities and its agents, which among other

5 things, obligated them to perform a prompt, fair and thorough investigation of the Claim arising

6 out of the acts alleged in the Claim and in the Medical Malpractice action.  The CARE Entities

7 were further obligated to handle this claim fairly and equitably, to give at least equal consideration

8 to the interests of its insured as it did its own financial interests, and to make a good faith effort to

9 reach a prompt, fair and equitable settlement of the Claim which it failed to do.

10 28. Snover was a patient of Gupta.  Snover was diagnosed by Gupta with superimposed preeclampsia

11 and Gupta deemed that her child's delivery was necessary.  Gupta performed a C-section.

12 29. After the C-section was performed, Snover was initially responsive.  However, after Gupta left the

13 operating room Snover became unresponsive.  Snover was diagnosed with a severe anoxic brain

14 injury rendering her mentally and physically incapacitated requiring 24 hour care.  The child was

15 born without injury.

16 30. As a result of Snover's injury, she made a claim for damages against Gupta, which was timely

17 reported to CARE INC (the Claim).

18 31. On November 21, 2019, Adria Snover, by and through her guardian ad litem, Jordan Callihan,

19 filed a medical malpractice action (Action) against Gupta, and others, for professional negligence

20 on Snover's behalf and loss of consortium on behalf of Callihan.  Callihan withdrew his loss of

21 consortium cause of action.

22 32. Snover settled the Action with the anesthesiologist for $1 million and with the hospital for $2.5

23 million.  The case went to trial solely against Gupta.

24 33. Both settlements were pursuant to a finding by the Superior Court that they were made in good

25 faith.  Hence, a jury finding of just 1% liability on Gupta would result in Gupta being liable for

26 the entire economic judgment less a credit of $3.5 million dollars.

27 34. On May 19, 2023, a jury returned a verdict finding that Gupta was negligent and that she was

28 15% responsible for Snover's injuries.  As of June 26, 2023, Dr Gupta's share of liability

exceeded $6 million dollars.

5

**COMPLAINT**

35. This judgment is collecting statutory interest of 10% per anum.

36. Gupta has assigned her right to sue CARE INC and by extension CARE LLC, solely for the over limits judgment to Snover in exchange for a covenant from Snover not to execute on the over limits judgment.  Gupta has retained her personal rights to sue for and collect her emotional distress damages and punitive damages.

37. CARE INC has conceded that this judgment exceeds Gupta's Policy limits.

38. As of June 26, 2023, CARE INC had also taken the position that there was less than $250,000 of indemnity limits available under the Policy to settle with plaintiff Snover.

39. Because of CARE INC's and CARE LLC's unreasonable claims handling, it spent Gupta's entire one-million dollar indemnity limit defending Gupta against Snover's Claim despite having had at least seven opportunities to settle Snover's Claim at or within Gupta's remaining policy limits.

**FIRST CAUSE OF ACTION**

(Breach of the Implied Covenant of Good Faith and Fair Dealing by Plaintiffs Against CARE LLC and DOES 1 Through 50)

40. Plaintiffs reallege and incorporates herein by reference as if fully set forth in full paragraphs 1 through 39 of this Second Amended Complaint hereinabove.

41. As a consequence of the issuance of the Policy, the relationship of insurer and insured was created between Gupta and the CARE Entities.  This relationship gave rise to an implied covenant of good faith and fair dealing owed on the part of CARE Entities and its agents, which among other things, obligated them to perform a prompt, fair and thorough investigation of the Claim arising out of the acts alleged in the November 21, 2019 Medical Malpractice action.  The CARE Entities were further obligated to handle this claim fairly and equitably, to give at least equal consideration to the interests of its insured as it did its own financial interests, and to make a good faith effort to reach a prompt, fair and equitable settlement of the claim which it failed to do.

42. At all times relevant herein, Gupta fully cooperated with the CARE Entities.

43. At all times relevant herein the CARE Entities had more than enough information, to demonstrate that the damages claimed in the Action were real, serious, exceeded the policy limits and warranted settlement.

6

**COMPLAINT**

44.  For example, upon being retained by the CARE Entities to defend Gupta, the attorneys selected by the CARE Entities put the CARE Entities on notice that the damages would be in the eight figure range, and that Gupta was 30% liable and that Snover had a 40% chance of prevailing against her.  CARE also projected defense expenses as being $363,000.

45.  The CARE Entities were also put on notice that Snover's lawyer Mr. Fagel "is a preeminent medical malpractice attorney," who "works up files aggressively and spares no expense.  Hence the cost of defense can get costly."  The CARE Entities were informed that the case was "medically complex," and that Snover's damages "will be quite extensive."

46.  The CARE Entities knew that using $10,000,000 as a minimum number in excess of seven figures meant that Gupta's 30% liability could be worth approximately $3,000,000, with a 40% chance of losing.  That's $1.2 million dollars, or $200,000 over her policy limits with no burning of the indemnity.  However, once the co-defendants settled out for approximately $3.5 million dollars, a finding of just 1% liability on Gupta would make her liable for $6.5 million dollars.  This is a critical issue that the CARE Entities never considered until it was too late and of which the CARE Entities were informed of by Gupta's defense attorneys in their initial attorney evaluation of the case.

47.  The CARE Entities retained the services of Dr. Larry Griffin, an expert medical doctor consultant, who advised the CARE Entities and David Prisco that Gupta had ignored the medical advice of a maternal fetal medical specialist who was critical of Gupta's handling of Snover's pregnancy.

48.  The CARE Entities and David Prisco ignored the opinion of their own medical expert, Dr. Gene Parks who was also critical of Gupta.

49.  The CARE Entities and David Prisco also ignored that Snover's medical expert agreed with the CARE Entities' retained medical expert who was critical of Gupta's handling of Snover's pregnancy.

50.  The CARE Entities ignored all of this medical evidence as well as the opinions of its own unbiased medical experts.

51.  Instead of recognizing Gupta's huge potential liability the CARE Entities  and David Prisco ignored the results of their own investigation and opinions of their own defense attorneys and

7

**COMPLAINT**

1    instead shopped for a medical expert who would provide the CARE Entities  and David Prisco

2    with the opinion that they wanted to hear, instead of the truth, never considering the huge

3    potential verdict against Gupta.

4  52.  During the pendency of the Medical Malpractice action the CARE Entities had multiple

5    opportunities to settle the Action for an amount within the Policy limits that would have been

6    accepted by the plaintiff had the CARE Entities  offered it.

7  53.  In the underlying Action, Gupta through her attorneys identified in form interrogatories, that

8    Gupta, through the CARE Entities had a $1,000,000/3,000,000 policy to cover this claim/Action.

9

10  54.  Snover made at least seven (7) settlement demands to Gupta, all at or within Gupta's remaining

11    indemnity limits.  Plaintiffs are informed and thereupon believe that each one of those seven

12    settlement demands was transmitted to the CARE Entities.  Each settlement demand was

13    unreasonably rejected by the CARE Entities, and David Prisco, with absolutely no consideration

14    given to Gupta's huge financial exposure.

15    a.  In June 2021- Plaintiff Snover served a CCP 998 Offer to settle for Gupta's Policy limits

16    of $ 1,000,00.00.  Instead of even considering this demand, the CARE Entities ignored

17    that it was a manifestation of Snover's Intent to Settle, rejected it and objected that it was

18    defective.  This CCP 998 was unreasonably permitted to expire by the CARE Entities .

19    David Prisco, musing that Snover had already obtained at least one million dollars in

20    settlement money from one of the other defendants, callously asked Gupta's attorneys to

21    set Snover up somehow so that the CARE Entities could get some of the one million

22    dollars in settlement money that Snover had obtained from other defendants in the case.

23    Neither the CARE Entities nor David Prisco informed Gupta of Snover's settlement

24    demand.

25    b.  On July 29 2021, Snover made another demand for the policy limits which Snover agreed

26    to keep open until the parties could mediate.  Although the CARE Entities had Gupta's

27    consent to settle, David Prisco's unreasonable response was: "I am not interested in

28    mediating a case that plaintiff counsel said he would dismiss."  Elaborating that "We

    [CARE] have incurred $99,714 in defense expenses.  If Dr. Gupta wants to consent the

1    CARE Entities  would be amiable to the $29,999 non-reportable limits as a business

2    decision to avoid additional fees and costs."  This was unreasonable given Gupta's

3    potential liability and no consideration was given to protect Gupta.  Again, the CARE

4    Entities did not inform Gupta of this settlement demand.

5    c.    On August 10, 2021, the CARE Entities' motion for summary judgment was denied.  The

6    CARE Entities now had Snover's medical expert's declaration and knew that Snover's

7    theory of the case is the same as the fetal medical expert Dr. Brar's and the CARE

8    Entities' expert Dr. Griffin.  Yet, the CARE Entities, and David Prisco, unreasonably still

9    refused to settle, ignored the facts, and instead engaged in unprofessional and

10    unreasonable name-calling, with David Prisco referring to referring to both Bruce Fagel

11    and his medical experts as liars even though the CARE Entities' own medical experts

12    agree with them.

13    d.    In September 2021, Gupta sent correspondence to the CARE Entities, through David

14    Prisco, giving her consent to settle and demanding they settle the Action within her

15    remaining policy limits.

16    e.    Also in September 2021, Snover contacted the CARE Entities again, and informed them

17    that her settlement demand was $1 million dollars and asked if CARE INC was agreeable

18    to mediation and proposed mediation dates.  In response David Prisco unreasonably

19    stated that he "was not interested in settling" and would not discus it with Snover's

20    attorney.  Adding "we [CARE Entities] are not willing to pay anywhere near remaining

21    policy limits."

22    f.    In November 2021, Plaintiff, Snover sent another $1,000,000 demand to Gupta to settle

23    the entire Snover case, including obtaining a loss of consortium and wrongful death

24    waiver for Gupta.  This offer to settle was unreasonably ignored by the CARE Entities

25    and David Prisco.  Instead Prisco unreasonably states that they should "feel out" Snover's

26    lawyer for a settlement "a little above $100,000."  And contrary to all evidence and the

27    results of CARE INC's investigation states that "that "Bruce [Snover's attorney] will not

28    try the case."  The CARE Entities attempted to shave money from Snover's settlement

    demand and gamble with Gupta's financial future.

9

**COMPLAINT**

g.   Knowing that Snover wanted to settle, the CARE Entities unreasonably and without any justification failed to engage in any effort to protect Gupta's reputation or financial security throughout 2022.

h.   On September 27, 2022, Snover served a third CCP § 998 Offer to Compromise for the policy limits. Neither the CARE Entities nor David Prisco ever bothered to respond to it.

i.   Also on September 27, 2022, Snover made a separate written settlement demand clarifying that "this offer/demand to settle all claims is for an amount within current available insurance coverage for Dr. Gupta." Neither the CARE Entities nor David Prisco ever bothered to respond to it or notify Gupta of this settlement demand.

j.   In November 3, 2022, Counsel for the CARE INC advised that Gupta's policy is an eroding policy. Knowing that a potential verdict far exceeded Gupta's remaining policy, David Prisco accused Snover's attorney of "chest thumping" and unreasonably offered Snover "one more chance" to accept $100,000 to settle on behalf of Gupta. Prisco unreasonably gave a November 10, 2022 as the date that the settlement offer would expire; just 7 days after offering it. Gupta was not notified of this settlement demand.

k.   On November 10, 2022, Snover's attorney Bruce Fagel, corresponded that they would agree to settle for Gupta's $1,000,000 policy limits or the current balance of Gupta's insurance policy, whichever is less. There was no response by the CARE Entities. Gupta was not notified of this settlement demand.

l.   On January 31, 2023 Prisco realized that he has blundered the settlement negotiations and admits "I made a mistake by not agreeing to a second mediation." Yet he still refuses to accept Snover's settlement demand.

m.   On February 17, 2023, without any additional written settlement demands from Snover, and because he knows that he has unreasonably mismanaged settlement demands, and with the policy indemnity limit demand still open, Prisco unilaterally offers to settle for $350,000. Incredibly, Prisco's offer contained a four-day expiration date.

n.   On February 20, 2023, Prisco, now in a panic, asks defense counsel "what happened with the $350,000 written offer?" Defense counsel responds that "Bruce [plaintiff's counsel] has not even mentioned it. I really do not see him negotiating at this point. He will likely

10

**COMPLAINT**

1    hold at the remaining policy [limit]."  Putting Prisco on notice that the CARE Entities

2    need to accept the indemnity limit settlement demand.

3    o.    On February 21, 2023, with the CARE Entities knowing there was over limits exposure to

4    Gupta, and knowing that Snover was still demanding Gupta's remaining policy limits,

5    Prisco brags about his settlement record, stating that "CARE [Prisco] had a great

6    [settlement] record going.  I [Prisco] am the only claims professional CARE had since

7    2006.  No case settled for $1,000,000 including the combination of defense expenses and

8    indemnity, That is with 748 closed cases."  This is evidence that Prisco was more

9    concerned about his "settlement record" than he was about protecting Gupta or acting

10    reasonably in light of the facts.

11    p.    Subsequently, again ignoring that Snover was still demanding the remaining policy

12    indemnity limits, and with no reasonable justification for offering less, the CARE Entities

13    offered to settle for $500,000.

14    q.    Thereafter on March 2, 2023 the CARE Entities and David Prisco offered $600,000 to

15    Snover, thereby again rejecting her remaining policy limits indemnity demand.  And

16    misrepresenting to Snover' s counsel that this was all that was left on the Policy's

17    indemnity limits.  This was not true and David Prisco knew that it was a

18    misrepresentation when he made it.

19    **r.**    While the CARE Entities were wasting time with these lowball offers, Gupta's Policy

20    limits were eroding.

21    **s.**    On March 13, 2023 Gupta, again sent correspondence to the CARE Entities demanding

22    they settle for her remaining indemnity policy limits.  The CARE Entities ignored Gupta

23    again.

24    t.    On March 13, 2023 the CARE Entities offered Snover $724,716.26.  Again telling

25    Snover's counsel that this was the remainder of Gupta's Policy limits.  This time

26    however, Snover's counsel rejected David Prisco's offer because he testified that he lost

27    all confidence that David Prisco was being truthful because Prisco had represented to him

28    on the same day that the Policy had only $600,000 in indemnity limits, suddenly it

    went up by almost $125,000 with no explanation from the CARE Entities or David

11

**COMPLAINT**

1     Prisco.

2     u.     While all of these settlement negotiations were taking place, Gupta had given the CARE

3            Entities permission to settle for her entire policy limits.  The CARE Entities failed to

4            provide Cumis counsel to Gupta to advise her during these settlement negotiations even

5            though a conflict of interest existed between the CARE Entities and Gupta and the CARE

6            Entities and David Prisco were gambling with her financial future.

7     v.     And in a complete breakdown of the CARE Entities' recognition of its obligations to

8            Gupta, David Prisco, maliciously responded that he would spend every dime of Gupta's

9            Policy limits and teach plaintiff's counsel a lesson by leaving him with nothing to be able

10           to collect because the policy limits would be gone and the CARE Entities would no

11           longer have to provide Gupta with a defense, thereby exhibiting a callous indifference and

12           a complete disregard for Gupta's rights under the Policy.

13    w.     And to further show a complete and unreasonable misunderstanding of the CARE

14           Entities' obligations to Gupta, David Prisco chastised defense counsel for not placing the

15           CARE Entities' interests ahead of Gupta and telling defense counsel that "the real

16           number one client is CARE INC," not Gupta and that defense counsel should have

17           protected the CARE Entities and not Gupta.

18  55.   In handing and processing Gupta's claim for benefits under the Policy, and in controlling the

19        defense of the Action, the CARE Entities breached the implied covenant of good faith and fair

20        dealing by the following additional unreasonable acts:

21           i.     By engaging in the unreasonable conduct set forth hereinabove;

22           ii.    By relying on specious and non-meritorious excuses for not settling when liability

23                  was reasonably clear and the damages exceeded Gupta's policy limits, such as

24                  expert shopping and not wanting to ruin David Prisco's stellar settlement record;

25           iii.   By failing to conduct a thorough, timely investigation of the Claim;

26           iv.    By failing to independently and/or thoroughly evaluate the Claim and ignoring the

27                  advice of its medical experts and defense counsel;

28           v.     By interpreting policy language in a manner that creates illusory coverage;

             vi.    By not communicating all relevant information to Gupta concerning the Claim

                                         12
                                    **COMPLAINT**

1                 and the Action and the amount of her remaining Policy indemnity limits;

2      vii.    By ignoring the fact that the other defendants had settled thereby leaving Gupta as

3                 the sole defendant to go to trial in a case where other insurers recognized the

4                 liability risk and settled and ignoring that now a finding of one-percent (1%)

5                 liability on Gupta would make her liable for the entire amount of economic

6                 damages;

7      viii.   By failing to clearly communicate to Gupta the reasons why the other defendant's

8                 had settled and the import of a one-percent finding of liability against her;

9      ix.    By handling the Claim and then doing so in a manner that damaged Gupta and her

10                medical practice;

11      x.     By making unreasonable and lowball settlement offers as stated hereinabove;

12      xi.    By placing its interests above Gupta and not at least giving Gupta's interest equal

13                consideration to the CARE Entities;

14      xii.    By otherwise refusing and failing to protect Gupta's interests by the CARE

15                Entities' failure to settle the action when liability became reasonably clear and

16                Gupta's exposure greatly exceeded the policy limits, such as when the other two

17                defendants settled leaving Gupta potentially liable for the entirety of the

18                overlimits judgment;

19      xiii.   By failing to negotiate towards a reasonable settlement or permit Gupta to conduct

20                her own settlement negotiations;

21      xiv.   By ignoring repeated settlement demands, at least seven, by the Plaintiff, Snover,

22                which were actual offers to settle and at least constituted manifestation of the

23                Plaintiff's intent to settle;

24      xv.    By ignoring Gupta's repeated requests to the CARE Entities to settle the action at

25                or within Gupta's remaining policy limits;

26      xvi.   By ignoring its contractual promise to not unreasonably ignore Gupta's consent to

27                settle;

28      xvii.   Failing to settle the Claim promptly, when liability became apparent and the

                  damages greatly exceeded the Policy's limits, such as when its own medical

13

**COMPLAINT**

1                   expert was critical of Gupta;

2      xviii. By gambling with Gupta's future by ignoring the facts of the case and refusing to

3                   settle so as not to ruin David Prisco's settlement record;

4      xix. By ignoring that the Policy was a self-consuming or burning limits policy which

5                   created a higher duty to settle as early as possible;

6      xx. By failing to give Gupta's interests at least as much consideration as its own in

7                   evaluating the "reasonableness" of the Medical Malpractice plaintiff's settlement

8                   demand, and instead claiming that the CARE Entities were the "number one"

9                   client to be protected;

10      xxi. By ignoring the fact that the most prudent manner of disposing of the Medical

11                   Malpractice case was to settle it when the plaintiff made settlement demands after

12                   the other defendants settled;

13      xxii. By ignoring the fact that other insurers settled the action because they realized that

14                   the focus of the inquiry is whether, in light of the victim's injuries and the

15                   probable liability of the insured, the ultimate judgment is likely to exceed the

16                   amount of the settlement offer;

17      xxiii. By knowingly violating multiple provisions of the Fair Claims Practices

18                   Regulations [including Ins. Code § 790.03(h) by:

19            (1)     Failing to acknowledge and act reasonably promptly upon communications

20                       with respect to claims arising under insurance policies, as stated herein

21                       above;

22            (2)     Failing to adopt and implement reasonable standards for the prompt

23                       investigation and processing of claims arising under insurance policies

24                       because it erroneously believed that it had no duty to investigate the Claim

25                       and that the CARE Entities were the "real number one client";

26            (3)     Not attempting in good faith to effectuate prompt, fair, and equitable

27                       settlements of claims in which liability has become reasonably clear by

28                       taking the position that the CARE Entities could reduce the indemnity

                      limits to zero leaving Gupta with no indemnity money and leaving the

14

**COMPLAINT**

1                          Plaintiff to go solely after Gupta and not the CARE Entities;

2                (4)     Failing to provide promptly a reasonable explanation of the basis relied on

3                       in the insurance policy, in relation to the facts or applicable law, for the

4                       denial of a claim or for the offer of a compromise settlement.

5 56.    The CARE Entities' handling of the action, and its refusal to settle, as alleged herein above,

6        showed a complete and conscious disregard for Gupta's rights.

7 57.    Without limitation and in addition to the foregoing incorporated paragraphs, the CARE Entities,

8        without reason or proper cause, ignored Gupta's repeated requests and consent, to settle the

9        action and not have her go to trial.

10 58.    The CARE Entities did the foregoing things intentionally, including engaging in expert shopping,

11        ignoring at least seven opportunities to settle for Gupta's remaining indemnity limits, in order to

12        shave money from the settlement, protect the CARE Entities' financial interests and place them

13        ahead of Gupta's because Prisco believed that the CARE Entities were the primary client of

14        defense counsel, gamble with Gupta's financial future and the viability of her medical practice,

15        refused to speak to Snover's lawyers unless they were the principal of the law firm, despite the

16        CARE Entities clear and unequivocal obligation to protect Gupta and to settle the claim once

17        liability became reasonably clear and the do so.

18 59.    All of the foregoing was done with the advance knowledge and ratification of management level

19        agents, Directors of the CARE Entities, such as Gregory Cook and Robert Pope, including David

20        Prisco, employees of CARE INC and CARE LLC, including its owner and Directors.

21 60.    As a direct, proximate and legal result of CARE INC's and CARE LLC's breach of the implied

22        covenant of good faith and fair dealing as alleged herein, Gupta was deprived of the Policy

23        benefits which rightfully belonged to her, all to her damage according to proof.

24 61.    As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

25        implied covenant of good faith and fair dealing as alleged herein Gupta is liable for an overlimits

26        judgment which is collecting statutory interest, all in an amount according to proof at trial;

27 62.    As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

28        implied covenant of good faith and fair dealing as alleged herein, Gupta's reputation and medical

       practice has been damaged and she is exposed to, among other things, potential loss of hospital

15

**COMPLAINT**

1    privileges, all in an amount according to proof at trial;

2    63.    As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

3          implied covenant of good faith and fair dealing as alleged herein, Gupta has suffered, and

4          continues to suffer severe emotional distress.

5    64.    As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

6          implied covenant of good faith and fair dealing as alleged herein, Gupta was and will be forced to

7          incur actual expenses for independent consultants, attorneys fees and other litigation costs,

8          including expert witness fees, all to her damage according to proof at trial.

9    65.    In committing the acts described hereinabove, CARE INC and CARE LLC acted in conscious

10          disregard of the rights of Gupta, and was guilty of malice, oppression and fraud in that the CARE

11          Entities acted with a conscious disregard for Gupta's rights to the benefits owed her under the

12          contract and placed its interest ahead of hers.  This conduct warrants an assessment of punitive

13          damages in an amount appropriate to punish defendant and deter others from engaging in similar

14          wrongful conduct.

15    66.    Based upon the foregoing, CARE INC and CARE LLC are both liable for the full amount of the

16          judgment plus all statutory interest, as well as the damage the judgment has caused to Gupta

17          personally and to her medical reputation and practice.

18                                    **SECOND CAUSE OF ACTION**

19          (Breach of Written Insurance Contract by Gupta Against CARE LLC and DOES 1 Through 50

20                                            inclusive)

21    67.    Plaintiffs reallege and incorporates herein by reference as if fully set forth in full paragraphs 1

22          through 66 of this Complaint herein above.

23    68.    As a consequence of the issuance of the Policy, the relationship of insurer and insured was

24          created between Gupta and the CARE Entities.  This relationship gave rise to an implied

25          covenant of good faith and fair dealing owed on the part of the CARE Entities and its agents,

26          which among other things, obligated them to perform a prompt, fair and thorough investigation

27          of the Claim arising out of the acts alleged in the November 21, 2019 Medical Malpractice

28          action.  The CARE Entities  were further obligated to handle this claim fairly and equitably, to

          give at least equal consideration to the interests of its insured as it did its own financial interests,

16

**COMPLAINT**

1        and to make a good faith effort to reach a prompt, fair and equitable settlement of the claim

2        which it failed to do.

3    69.    At all times relevant herein, Gupta fully cooperated with the CARE Entities.

4    70.    At all times relevant herein the CARE Entities had more than enough information, to

5        demonstrate that the damages claimed in the Medical Malpractice action were real, serious,

6        exceeded the policy limits and warranted settlement.

7    71.    During the pendency of the Medical Malpractice action the CARE Entities had multiple

8        opportunities to settle the Medical Malpractice action for an amount that would have been

9        accepted by the Medical Malpractice plaintiff had the CARE Entities offered it.

10   72.    Plaintiffs more specifically incorporate herein by reference, as if fully set forth in full herein,

11        paragraphs 1 through 64 herein above.

12   73.    On multiple occasions Gupta wrote to the CARE Entities and although expressed her opinion

13        that she was not negligent, requested that the CARE Entities settle the case for whatever was left

14        on her Policy limits.  Gupta understood that the Medical Malpractice plaintiffs had made a

15        demand for her Policy's indemnity limits and gave her consent to settle, expressing her concerns

16        about the "vagaries of litigation," and the huge financial exposure she faced if the CARE Entities

17        decided, over her objections, to take the matter to trial.

18   74.    The CARE Entities' handling of the Claim and action, and its refusal to settle, as alleged herein

19        above, showed a complete and conscious disregard for Gupta's rights.

20   75.    The CARE Entities' handling of the action, and its refusal to settle, as alleged herein above,

21        showed a complete and conscious disregard for Gupta's rights.

22   76.    Without limitation and in addition to the foregoing incorporated paragraphs, the CARE Entities,

23        without reason or proper cause, ignored Gupta's repeated requests to settle the action and not

24        have her go to trial.

25   77.    The CARE Entities did the foregoing things in order to protect its financial interests and gamble

26        with Gupta's future, despite its clear and unequivocal obligation to do so.

27   78.    All of the foregoing was done with the advance knowledge and ratification of management level

28        agents and employees of CARE INC and CARE LLC, including its owner ans directors.

     79.    As a direct, proximate and legal result of CARE INC's and CARE LLC's breach of the implied

17

**COMPLAINT**

1    covenant of good faith and fair dealing as alleged herein, Gupta was deprived of the Policy

2    benefits which rightfully belonged to her, all to her special damage according to proof.

3  80.  As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

4    implied covenant of good faith and fair dealing as alleged herein Gupta is liable for an overlimits

5    judgment which is collecting statutory interest, all in an amount according to proof at trial;

6  81.  As a further direct, proximate and legal result of CARE INC's **and** CARE LLC's breach of the

7    implied covenant of good faith and fair dealing as alleged herein, Gupta's reputation and medical

8    practice has been damaged and she is exposed to, among other things, potential loss of hospital

9    privileges, all in an amount according to proof at trial;

10  82.  As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

11    implied covenant of good faith and fair dealing as alleged herein, Gupta has suffered, and

12    continues to suffer severe emotional distress.

13  83.  As a further direct, proximate and legal result of CARE INC's and CARE LLC's breach of the

14    implied covenant of good faith and fair dealing as alleged herein, Gupta was and will be forced to

15    incur actual expenses for independent consultants, attorneys fees and other litigation costs,

16    including expert witness fees, all to its special damage according to proof at trial.

17  84.  In committing the acts described hereinabove, CARE INC and CARE LLC acted in conscious

18    disregard of the rights of Gupta, and was guilty of malice, oppression and fraud in that CARE

19    INC and CARE LLC acted with a conscious disregard for Gupta's rights to the benefits owed her

20    under the contract and placed its interest ahead of hers.  This conduct warrants an assessment of

21    punitive damages in an amount appropriate to punish defendant and deter others from engaging

22    in similar wrongful conduct.

23  85.  Based upon the foregoing, CARE INC and CARE LLC is liable for the full amount of the

24    judgment plus all statutory interest, as well as the damage the judgment has caused to Gupta

25    personally and to her medical reputation and practice.

26                       **THIRD CAUSE OF ACTION**

27          (Fraud by Gupta Against CARE INC, CARE LLC and DOES 1 Through 50)

28  86.  Gupta realleges and incorporates herein by reference as if fully set forth in full paragraphs 1

    through 85 of this Second Complaint herein above.

18

**COMPLAINT**

87.    At all times relevant hereto, the CARE Entities promised to act as Gupta's insurer and to defend and indemnify Gupta for any claim against her and to pay on her behalf any sums she became legally obligated to pay as damages because of liability imposed upon her.

88.    As alleged herein below, the CARE Entities, at the time they entered into the insurance contract with GUPTA, never intended to fulfill the above promises they made to Gupta because the CARE Entities had a practice and policy of never paying the policy limits for any claim made against any of its insureds even if the insured gave their consent and even if the evidence establishing liability and damages against its insureds warranted such policy limit payments.

89.    This policy and practice of never paying insurance policy limits on a claim was in full force and effect at the time the CARE Entities and Gupta entered into the insurance contract.

90.    At the time the CARE Entities and Gupta entered into the insurance contract, the CARE Entities had no intention of ever fulfilling its contractual promises it made to Gupta to indemnify her up to one-million dollars.

91.    At all times relevant herein, David Prisco was, and is, a Director of CARE INC and CARE LLC and was and is the sole claims adjuster for the CARE Entities and was and is solely responsible for all claims settlement recommendations and was and is a member of the CARE Entities' Settlement Committee.

92.    The CARE Entities' policy and practice of refusing to pay policy indemnity limits even if warranted by the fats and evidence is evidenced by statements made by David Prisco, who stated that the CARE Entities have never paid the policy limits on any claim he adjusted for the CARE Entities in over 14 years that he has adjusted claims for it and the Gupta's claim was not going to be the first time that the CARE Entities  would make said policy limit payment.

93.    As previously alleged herein above, CARE LLC is the parent company and alter ego of CARE INC and liable for all of the acts of CARE INC.

94.    Further, CARE INC acted with such impunity because the parent company CARE LLC, intentionally kept CARE INC underfunded, undercapitalized, its potential liabilities under-reserved, sets inadequate reserves, and under-insured, so as to intentionally be able to avoid having to pay for any large losses, including overlimits losses for its bad faith refusal to settle.

95.    The CARE Entities' impunity is evidenced and underscored by the fact that during the handling

19

**COMPLAINT**

1    of Gupta's claim, David Prisco maliciously stated that he would spend every dime of Gupta's

2    indemnity limits on defending the case, rather than settle for the policy limits, and intentionally

3    and knowingly leave Snover without any ability to collect any indemnity money from the CARE

4    Entities for its bad faith refusal to settle, leaving Snover with no other alternative but to attempt

5    to collect said overlimits judgment from its insured, Gupta who would then have no insurance

6    benefits whatsoever.  Not even a dime for an appeal.

7    96.   All of the foregoing was done intentionally and with the advance knowledge and ratification of

8          management level agents and employees of CARE INC and CARE LLC, including its owner and

9          directors.

10   97.   This practice and policy and history of refusing to settle for policy limits, and other acts alleged

11         hereinabove, was malicious, despicable, oppressive, and in conscious disregard of the rights of

12         Gupta.  This conduct warrants an assessment of punitive damages in an amount appropriate to

13         punish defendant and deter others from engaging in similar wrongful conduct.

14   98.   Further, CARE INC, CARE LLC, Gregory Cook and Robert Pope (collectively "the

15         Conspirators") have intentionally created a contractual scheme, and use the confidentiality of

16         arbitration, in bad faith and in a manner designed to defraud the insureds and every physician in

17         California by creating a contract scheme whereby insureds, including Gupta, could be left

18         without indemnity coverage for claims, and also without CARE INC's ability to pay for any bad

19         faith caused by CARE INC and/or David Prisco, and also insure that their bad faith scheme

20         would be out of reach of the jurisdiction of California courts, or the California Legislature to

21         stop.

22   99.   The Conspirators achieved this fraudulent scheme using a number of devices.

23   100.  First, the Conspirators intentionally include multiple arbitration clauses with different venues in

24         their contracts making it difficult to impossible for an insured physician to vindicate their

25         contractual rights, or to collect on any bad faith judgment.

26   101.  As previously alleged herein above, CARE INC has an arbitration clause that requires a

27         physician insured to arbitrate all disputes in California.

28   102.  Plaintiff is informed and believes, based upon statements made by CARE INC, and thereupon

     alleges that at all times relevant herein CARE LLC has an arbitration clause that requires a

20

**COMPLAINT**

29

1    physician insured to arbitrate the same dispute, based upon the same facts, the same evidence and

2    the same witnesses, in Kentucky against the same directors and officers of CARE INC who

3    would then be acting on behalf of CARE LLC.

4    103.    CARE LLC was given the opportunity to be a part of the California arbitration against CARE

5    INC but has refused.

6    104.    Both CARE INC and CARE LLC were also given the opportunity to litigate this matter in a

7    California court, but have also refused.

8    105.    CARE INC has also stated that if Gupta pursues it and obtains a judgment against it, that it

9    would go into receivership and that neither Gupta nor Snover would ever receive any money

10   from the litigation.

11   106.    This is because the Conspirators have created a fraudulent scheme wherein they drain CARE

12   INC of the funds it requires to pay indemnity limits when warranted, or to pay for any bad faith

13   judgment that it may become liable for, and instead keeps CARE INC under-capitalized,

14   underfunded and under-insured for its fraudulent acts.

15   107.    In committing the acts described hereinabove, CARE INC and CARE LLC acted in conscious

16   disregard of the rights of Gupta, and were guilty of malice, oppression and fraud in that CARE

17   INC and CARE LLC acted with a conscious disregard for Gupta's rights to the benefits owed her

18   under the contract and placed its interest ahead of hers.  This conduct warrants an assessment of

19   punitive damages in an amount appropriate to punish defendant and deter others from engaging

20   in similar wrongful conduct.

21                          **FOURTH CAUSE OF ACTION**

22              (Declaratory Relief by Gupta Against CARE LLC and DOES 1 Through 50)

23   108.    Gupta realleges and incorporates herein by reference as if fully set forth in full paragraphs 1

24   through 107 of this Complaint herein above.

25   109.    The subject CARE Entities' Policy states that CARE INC has "the right, but not the duty or

26   obligation, to investigate and Occurrence and the costs of any such investigation will be deemed

27   Defense Costs, even if incurred prior to the existence of a Claim."

28   110.    The subject CARE Entities' Policy defines Occurrence as "any actual or alleged error, omission,

     or accident in the furnishing of Professional Services as a qualified physician in the normal

                                        21

                                **COMPLAINT**

1    course of activity as a qualified physician . . .."   There is no dispute that the acts alleged by the

2    Medical Malpractice plaintiff was an Occurrence.

3    111.   The subject CARE Entities' Policy defines Defense Costs as "all reasonable and necessary fees,

4    costs, and expenses incurred by us in the investigation and defense of any covered Claim."

5    112.   There is no dispute that Gupta was and is an Insured under the subject CARE Entities' Policy and

6    that a Claim had been made against her for an Occurrence.

7    113.   The subject CARE Entities Policy states that "[t]he Insureds will not incur and Defense Costs**,**

8    retain defense counsel, or settle, or offer to settle any Claim . . . without our prior written

9    consent, which consent shall not be unreasonably withheld."

10    114.   The subject CARE Entities' Policy is also a self-consuming or burning limits policy, in which

11    every dollar spent on Defense Costs reduces the indemnity limit the same amount.

12    115.   The CARE Entities' Policy also contains an Arbitration Clause which states in pertinent part

13    "that all disputes, controversies, or clams arising out of or relating to this policy or its breach,

14    termination, interpretation or invalidity, shall be submitted to final and binding arbitration . . .."

15    116.   Plaintiff Snover is not a party to the Policy.

16    117.   An actual controversy has arisen and now exists between Gupta and CARE INC and CARE LLC,

17    and each of them, relating to their respective rights, responsibilities, duties and obligations under

18    the CARE INC Policy.

19    118.   Gupta contends that pursuant to California law CARE LLC is liable for all promises made to

20    Gupta in the Policy.

21    119.   Gupta contends that pursuant to California law, the CARE Entities had an extra-contractual

22    obligation imposed by law to conduct a thorough and complete investigation of any occurrence

23    and that the CARE Entities are charged with constructive knowledge of all facts it would have

24    discovered had it conducted such investigations, and that a failure to conduct a thorough and

25    timely investigation is a breach of the implied covenant of good faith and fair dealing.

26    120.   The CARE Entities disputes these contentions because CARE contends that pursuant to the

27    Policy it had no "duty or obligation, to investigate an Occurrence."

28    121.   Gupta contends that because the Policy is a self-consuming policy, the CARE Entities had

     heightened obligations to settle as early as possible.

22

**COMPLAINT**

122. Gupta also contends that CARE LLC is the alter ego of CARE INC and is therefore liable and responsible for all of CARE INC's debts including judgments.

123. Gupta contends that the owners of CARE LLC and CARE INC are the same people and that the Director of Claims for CARE INC and CARE LLC is the same person.

124. Gupta contends that Robert Pope, Gregory Cook and David Prisco, all either owners or directors of both CARE INC and CARE LLC, govern both CARE entities and influence all decisions in both CARE entities.

125. Gupta contends that Robert Pope, Gregory Cook intentionally keep CARE INC undercapitalized with insufficient capital to meet CARE INC's prospective indemnity obligations by transferring CARE INC's capital to CARE LLC and then to themselves and that they have reduced CARE INC to a corporate shell that is incapable of meeting its prospective liability needs and that the working capital CARE LLC leaves to CARE INC is trifling compared to the potential business CARE INC needs to get done.

126. Gupta contends that both CARE INC and CARE LLC also share the same address and employees.

127. Gupta contends that given the alter ego status, it would be an injustice to allow CARE LLC and CARE INC to escape their financial obligations and responsibility to creditors and is therefore an abuse of the entity and plaintiff should be permitted to pierce the corporate vile and reach the assets of CARE LLC to satisfy the debits and other financial obligations of CARE INC.

128. Gupta also contends that CARE LLC requires its physician insureds to become members of CARE LLC as a pre-requisite to obtaining insurance from CARE INC.

129. Gupta contends that this dual membership then subjects its physician insureds, including Gupta to sign multiple arbitration agreements that, in the event of a disagreement with the CARE Entities, compel the insureds to arbitrate the same legal issues and facts in two different forums, one in Kentucky and one in California, in order to obtain complete relief.

130. Gupta contends that this multiple arbitration scheme that out of the same transaction or series of related transactions creates a possibility of conflicting rulings on a common issue of law or fact.

131. Gupta therefore contends that the use of multiple arbitration agreements is unconscionable and unenforceable and renders the entire arbitration scheme set up by the CARE Entities

23

**COMPLAINT**

1    unconscionable and unenforceable.

2    132.   Gupta further contends that the CARE Entities assert an advice of defense counsel defense as a

3           procedural device against their alleged bad faith conduct and simultaneously sues its defense

4           counsel in the Superior Court is another device that results in the parties to the arbitration

5           agreement to also become parties to a court action with a third party, arising out of the same

6           transaction or series of related transactions and therefore creates another possibility of conflicting

7           rulings on a common issue of law or fact.

8    133.   Gupta contends that the CARE Entities have in fact sued their Defense Counsel for legal

9           malpractice in the Los Angeles Superior Court, Central District, Case Number 24STCV01834

10          and have temporarily stayed said lawsuit.

11   134.   Gupta contends that CARE LLC and CARE INC's contractual scheme requiring arbitration in

12          multiple forums is therefor unconscionable and unenforceable.

13   135.   Gupta contends that this dispute is governed by California law.

14   136.   CARE disputes all of the above-alleged contentions

15   137.   Gupta contends that pursuant to California law the Policy's Arbitration Clause is unconscionable

16          and therefore not binding because:

17          a.    Defense Counsel is not a party to the arbitration agreement and may not be compelled to

18                arbitrate and has refused to arbitrate.

19          b.    CARE INC and CARE LLC have refused to join with all parties, including defense

20                counsel, in the same lawsuit.

21          c.    The arbitration clauses require the parties to the arbitration agreement to also become

22                parties to a court action with a third party, arising out of the same transaction or series of

23                related transactions and there is another possibility of conflicting rulings on a common

24                issue of law or fact. Snover is not party to the insurance policy contract;

25          d.    The arbitration clauses require Gupta to arbitrate in two separate arbitration forums in

26                two different States, using different substantive law, a dispute arising out of the same

27                transaction or series of related transactions creating another possibility of conflicting

28                rulings on a common issue of law or fact.

            e.    Under California law all claims based on the same transaction or series of related

24

**COMPLAINT**

1    transactions must be decided in a single suit; if not brought initially, they may not be

2    raised at a later date.

3    f.    Under California law, the cause of action may not be split and tried in two different

4        lawsuits, or in one lawsuit and in another arbitration;

5    g.    Under California law there is only a single cause of action for a wrongful failure to settle

6        within policy limits, which cause of action can give rise to two forms of damages: (1)

7        Compensation for pecuniary loss, and (2) general damages for mental distress, and an

8        insured who assigns her claim for breach of the duty to settle to a third party may not

9        "split" the cause of action and separately pursue a claim for nonassignable damages (i.e.,

10        emotional distress and punitive damages) incurred as a result of the same breach of the

11        duty to settle;

12    h.    Hence, this action must be decided in the same forum.

13    i.    The arbitration section & language are void as a matter law because they are inconsistent

14        with statutory requirements.

15    138.    Alternatively, Gupta contends that pursuant to California law, CARE LLC are bound by CARE

16        INC's arbitration clause and may be compelled to arbitrate this dispute in California.

17    139.    CARE disputes this contention and contends that this matter must be arbitrated in two separate

18        forums and then in the Superior Court..

19    140.    Gupta contends that the Policy is internally ambiguous and that the attorney's fees the CARE

20        Defendants expended in defense of the action do not reduce her Policy's indemnity limits

21        because:

22    a.    The Policy was a contract of adhesion and was drafted by the CARE Entities and the

23        definition of Defense Costs do not include attorney's fees;

24    b.    That any ambiguities in the Policy must be construed in Gupta's favor and against the

25        CARE Entities;

26    c.    That pursuant to California law, costs and attorneys' fees are different;

27    d.    That fees, as stated in the Policy's definition of Defense Costs are for experts and other

28        fees related to defending a trial, but not for attorneys' fees;

    e.    That Gupta's interpretation of the above costs and fees are underscored by the Policy's

25

**COMPLAINT**

34

1    plain language wherein CARE distinguishes between its duty to pay Defense Costs and

2    its duty to "retain counsel" for Defense and settlement of the Claim.

3    f.    Gupta contends that based upon the policy's plain language, or due to an internal

4    ambiguity, and the fact that CARE's agent represented to her that the subject Policy was

5    not a self-consuming policy, that the "fees" stated under Defense Costs do not include

6    attorney's fees.

7    141.    The CARE Entities dispute these contentions.

8    142.    Plaintiffs desire a declaration of their rights under the Policy with respect to the above stated

9    contentions.  Such a declaration is necessary and appropriate at this time in order that plaintiffs

10    may bring a joint action and not split the cause of action for Breach of the Implied covenant of

11    Good Faith and Fair Dealing.

12    143.    A timely declaration by this Court is both necessary and proper in order to set forth and

13    determine all rights, responsibilities, obligations, liabilities and duties which may exist between

14    the parties.

15    **PRAYER**

16    WHEREFORE, Plaintiffs prays for judgment as follows:

17    **ON THE FIRST CAUSE OF ACTION**

18    1.    For the amount of the May 19, 2023 over limits judgment against Gupta and in favor of

19    Snover, arising out of the underlying personal injury case;

20    2.    For all statutory interest on said over limits judgment to Snover;

21    3.    For general damages to Gupta according to proof at trial.

22    4.    For punitive damages as to Gupta.

23    **ON THE SECOND CAUSE OF ACTION**

24    1.    For all Policy benefits owed by CARE to Gupta.

25    **ON THE THIRD CAUSE OF ACTION**

26    1.    All damages according to proof to Gupta.

27    2.    For consequential damages according to proof to Gupta.

28    3.    For punitive damages as to Gupta.

//

26

**COMPLAINT**

**ON THE FORTH CAUSE OF ACTION**

For a Declaration from this Court that:

1.     pursuant to California law, the CARE Entities had an extra-contractual obligation imposed by law to conduct a thorough and complete investigation of any Occurrence and that the CARE Entities are charged with constructive knowledge of all facts they would have discovered had it conducted such investigations, and that a failure to conduct a thorough and timely investigation is a breach of the implied covenant of good faith and fair dealing.

2.     because the Policy is a self-consuming policy, the CARE Entities had heightened obligations to settle as early as reasonably possible;

3.     pursuant to California law the Policy's Arbitration Clause is unconscionable and not binding;

4.     the Policy is internally ambiguous in that the attorney's fees CARE expended in defense of the Medical Malpractice action do not reduce her Policy's indemnity limits.

**ON ALL CAUSES OF ACTION**

1.     For special damages according to proof;

2.     All costs and Attorneys' fees;

3.     For interest, including pre-judgment interest;

4.     For costs of suit incurred herein; and

5.     For such other further relief as the Court may deem just and proper.

DATED:   October 2, 2024                    LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES

By_____
Bruce G. Fagel,
Attorneys for Plaintiffs, ADRIA SNOVER, by and
through her Guardian ad Litem JORDAN CALLIHAN

//

//

//

//

27

**COMPLAINT**

**ON THE FORTH CAUSE OF ACTION**

For a Declaration from this Court that:

1.     pursuant to California law, the CARE Entities had an extra-contractual obligation imposed by law to conduct a thorough and complete investigation of any Occurrence and that the CARE Entities are charged with constructive knowledge of all facts they would have discovered had it conducted such investigations, and that a failure to conduct a thorough and timely investigation is a breach of the implied covenant of good faith and fair dealing.

2.     because the Policy is a self-consuming policy, the CARE Entities had heightened obligations to settle as early as reasonably possible;

3.     pursuant to California law the Policy's Arbitration Clause is unconscionable and not binding;

4.     the Policy is internally ambiguous in that the attorney's fees CARE expended in defense of the Medical Malpractice action do not reduce her Policy's indemnity limits.

**ON ALL CAUSES OF ACTION**

1.     For special damages according to proof;

2.     All costs and Attorneys' fees;

3.     For interest, including pre-judgment interest;

4.     For costs of suit incurred herein; and

5.     For such other further relief as the Court may deem just and proper.

DATED:  October 2, 2024                LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES

By _____
Bruce G. Fagel,
Attorneys for Plaintiffs, ADRIA SNOVER, by and
through her Guardian ad Litem JORDAN CALLIHAN

//
//
//
//

27

COMPLAINT

37

Oct.07.2024 04:28 PM                                                                    P 1/1

1
2  DATED:  October 2, 2024          LAW OFFICES OF MARSHALL SILBERBERG
3
4                                   By_____
                                       Marshall Silberberg
5                                      William Collins
                                       Attorneys for Plaintiffs, ARUNA GUPTA, M.D.
6  DATED:  October 2, 2024          ANGELO & DI MONDA
7
8                                   By_____
                                       Joseph Di Monda
9                                      Attorneys for Plaintiffs, ARUNA GUPTA, M.D.
10
11
12                          **DEMAND FOR JURY TRIAL**
13        Plaintiffs hereby demand a jury trial.
14
15
   DATED:  October 2, 2024          LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES
16
17
18                                  By_____
                                       Bruce G. Fagel,
19                                     Attorneys for Plaintiffs, ADRIA SNOVER, by and
                                       through her Guardian ad Litem JORDAN CALLIHAN
20
   DATED:  October 2, 2024          LAW OFFICES OF MARSHALL SILBERBERG
21
22
23                                  By_____
                                       Marshall Silberberg
24                                     William Collins
                                       Attorneys for Plaintiffs, ARUNA GUPTA, M.D.
25
   DATED:  October 2, 2024          ANGELO & DI MONDA
26
27
28                                  By_____
                                       Joseph Di Monda
                                       Attorneys for Plaintiffs, ARUNA GUPTA, M.D.

                                    28
                                    **COMPLAINT**