Bruce G. Fagel, SBN 103674
**LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES**
9200 West Sunset Boulevard, Suite 670
West Hollywood, California 90069
Tel: (310) 516-9035
Fax: (310) 928-7763

Attorneys for Plaintiff, ADRIA SNOVER,
by and through her Guardian ad Litem JORDAN CALLIHAN

Marshall Silberberg, SBN 58303
William S. Collins, SBN 289877
**LAW OFFICES OF MARSHALL SILBERBERG**
3121 Michelson Drive, Suite 525
Irvine, CA 92612
Telephone: (949) 718-0960
Facsimile: (949) 266-5811

Attorneys for Plaintiff, ARUNA GUPTA, M.D.

Joseph Di Monda SBN 184640
**ANGELO & DI MONDA**
3121 Michelson Drive, Suite 525
Irvine, CA 92612
Telephone: (310) 213-3554
Facsimile: (949) 266-5811

Attorneys for Plaintiff, ARUNA GUPTA, M.D.

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ADRIA SNOVER, by and through her Guardian ad Litem JORDAN CALLIHAN; and, ARUNA GUPTA, M.D., <br><br> Plaintiffs, <br><br> v. | CASE NO: 3:25-CV-411-CHB <br><br> Judge: Claria Horn-Boom <br><br> **SECOND AMENDED COMPLAINT** <br>   **1. Breach of Implied Covenant of Good Faith and Fair Dealing** <br>   **2. Negligence and Gross Negligence** <br>   **3. Contractual Indemnity** |

1

STEPHEN BARNES, as Chapter 7 Trustee for the Estate of Care Professional Liability Association,LLC, DOES 1 through 50 inclusive,

     Defendants,

4. **Breach of Fiduciary Duty**
5. **Conversion**
6. **Voidable Transfers**
7. **Accounting;**
8. **Declaratory Relief**

**REQUEST FOR JURY TRIAL**

Plaintiffs, Assignees and Judgment Creditors, Aruna Gupta, M.D. and Adria Snover, by and through her guardian ad litem Jordan Callihan complain, Individually and as Assignees of Care Risk Retention Group, Inc., and allege as follows:

### THE PARTIES

1.     At all times relevant herein, Plaintiff Aruna Gupta, M.D. (Dr. Gupta) was and is a physician licensed in the State of California and a resident of Riverside County, State of California.

2.     At all times relevant herein, Plaintiff Adria Snover (Snover), by and through her guardian ad litem Jordan Callihan, was and is a resident of Riverside County, State of California and an assignee of Aruna Gupta's bad faith rights to sue her insurer for the over-limits judgment.

3.     At all times relevant herein, defendant CARE Professional Liability Association, LLC (CARE LLC) was and is a Limited Liability Company existing under the laws of the State of Kentucky, doing business in California, and was and is the parent company of insurer CARE Inc. Service of process on CARE LLC may be made on the California Department of Insurance.

4.     At all times relevant herein, defendant CARE LLC was and is a purchasing group (PG) whose sole purpose is to market and sell CARE Inc.'s insurance products on a group basis for its members, and which purchases such insurance only for its members and only to cover their similar or related liability exposure. The PG's member's liability exposure to insureds arises out of a common profession. Neither CARE Inc. nor CARE LLC may exist without the other.

5.     CARE Inc. and CARE LLC are collectively referred to herein as the "CARE Entities."

6.     CARE Inc. is an insurer domiciled in the State of Vermont organized as a Risk Retention Group, but, pursuant to federal and state statutes, must comply with any State law regarding

1   deceptive, false, or fraudulent acts or practices.

2   7.      At all times relevant herein, defendant CARE Inc. was and is a subsidiary and a captive

3   insurance company in the business of providing insurance for the members of CARE LLC , and,

4   as Gregory Cook testified under oath, CARE Inc. is 100% wholly owned and controlled by

5   CARE LLC, Robert Pope, and Gregory Cook.

6   8.      Both CARE Inc. and CARE LLC are located at 13109 Eastpoint Park Blvd., Louisville,

7   Kentucky 40223.

8   9.      Robert Pope (Pope) is an individual, previously named herein as DOE number 1, and

9   based upon information and belief, resides in the State of Florida and at all relevant times herein,

10  was, and is, the President and Chairman of CARE Inc. and a member of CARE Inc.'s Board of

11  Directors.  CARE Inc's principal, and only, place of business was located at 13109 Eastpoint

12  Park Blvd., Louisville, Kentucky 40223.  At all times relevant herein, Pope is also the managing

13  member of CARE LLC and a member of its Board of Directors. Pope, directly or through entities

14  owned by him, owns 50% of CARE LLC.

15  10.     Gregory Cook (Cook) is an individual, previously named herein as DOE number 3, and a

16  resident of Kentucky. At all times relevant herein, Cook was, and is, the Vice-President of

17  CARE, Inc. and a member of CARE Inc.'s Board of Directors. Cook is also the President and

18  Chief Executive Officer of CARE LLC. Cook, directly or through entities owned by him, owns

19  50% of CARE LLC.

20  11.     David Prisco (Prisco) is an individual, previously named herein as DOE number 2, and,

21  upon information and belief, is a resident of Ohio. At all times relevant herein, Prisco was an

22  employee of CARE LLC and held the title of Director of Claims and which claims CARE LLC

23  administered for CARE Inc.

24  12.     Plaintiffs are unaware of the true names and/or capacities of the Defendants fictitiously

25  designated herein as DOES 1-50, inclusive, apart from those which have now been designated.

26  However, Plaintiffs are informed and believe, and based thereon allege, that each of the

27  fictitiously designated Defendants are responsible in some manner and liable by reason of that

28  responsibility for the injuries and damages alleged by Plaintiffs herein.  Plaintiffs will seek leave

3

**SECOND AMENDED COMPLAINT**

1  to amend this Complaint when the true name and/or capacities of such fictitiously designated

2  Defendants are ascertained.

3  13.    Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants

4  herein at times were the agents and/or employees of the others, and each such Defendant was

5  acting within the scope of said agency and/or employment when doing the specific acts on behalf

6  of other Defendants alleged herein.

7

8  ## THE UNDERLYING MEDICAL MALPRACTICE LAWSUIT

9  14.    Plaintiff Dr. Gupta is an obstetrician-gynecologist (OBGYN) licensed by the State of

10  California and was Snover's OBGYN.

11  15.    At all times relevant herein, Dr. Gupta had a written Professional Liability Insurance

12  Policy issued by CARE Inc. (the Policy).  At all times relevant herein, said Policy was in full

13  force and effect and was sold, delivered and issued in California.

14  16.    The Policy provided coverage for Dr. Gupta for professional negligence, defined in the

15  Policy as an "Occurrence," with Policy Limits of $1,000,000.00.  The Policy was an eroding-

16  limits policy, also known as a "burning limits policy," in which every dollar of defense costs and

17  fees, reduced the liability limit by the same amount. As such, the longer the case was litigated,

18  the lower the indemnity limits available to settle, and the greater the risk of an excess judgment

19  exposing the insured to personal liability.  This type of burning limits policy places a higher duty

20  on CARE Inc. and CARE LLC (collectively "the CARE Entities") to accept reasonable

21  settlement demands within policy limits from claimants.

22  17.    According to Cook, becoming a member of CARE LLC was a condition of obtaining

23  insurance from CARE Inc.

24  18.    Plaintiff Snover was a patient of Dr. Gupta. Snover was diagnosed by Dr. Gupta with

25  superimposed preeclampsia and Dr. Gupta deemed that her child's delivery was necessary. Dr.

26  Gupta performed a C-section.

27  19.    After the C-section was performed, Snover became unresponsive and was diagnosed with

28  severe anoxic brain injury rendering her mentally and physically incapacitated requiring 24-hour

4

**SECOND AMENDED COMPLAINT**

care. The child was born without injury.

20. As a result of Snover's injury, she made a claim for damages against Dr. Gupta, which was timely reported to CARE Inc. (the Claim).

21. On November 21, 2019, Snover, by and through her guardian ad litem, Jordan Callihan, filed a medical malpractice action (Action) against Dr. Gupta, and others, for professional negligence on Snover's behalf.

22. Snover settled the Action with the anesthesiologist for $1 million and with the hospital for $2.5 million. Both settlements were pursuant to a finding by the Superior Court that they were made in good faith.

23. The case went to trial solely against Dr. Gupta. CARE LLC had retained Constance Endelicato and her firm to represent Dr. Gupta in defense of the medical malpractice Action. Ms. Endelicato shared with management of CARE LLC on multiple occasions that proceeding to a jury verdict could expose Dr. Gupta, and consequently her insurer, to an over-limits judgment.

24. Despite demands on behalf of Dr. Gupta, CARE LLC failed and refused to make any reasonable offer to settle the malpractice Action on behalf of Dr. Gupta

25. On May 19, 2023, a jury returned a verdict finding that Dr. Gupta was negligent. The Court entered an over-limits Judgment in favor of Snover against Dr. Gupta in the amount of $5,415,885.

26. This judgment is accruing statutory interest of 10% *per annum.*

### THE BAD FAITH ARBITRATION AGAINST CARE INC.

27. Dr. Gupta assigned her right to sue CARE Inc solely for the over-limits judgment to Snover in exchange for a covenant from Snover not to execute on the over-limits judgment. Dr. Gupta retained her personal rights to sue for and collect her emotional distress damages and punitive damages.

28. CARE Inc. conceded that this judgment exceeds Dr. Gupta's Policy limits.

29. Dr. Gupta and Snover sued CARE Inc. in California's Riverside County Superior Court, and pursuant to the arbitration agreement in the insurance contract, the matter was sent to

binding arbitration with JAMS in Irvine, California.

30.     Pursuant to the arbitration agreement, the bad faith arbitration was conducted pursuant to California substantive and procedural law.

31.     Beginning on March 24, 2025 and continuing through March 28, 2025, an arbitration was held at the JAMS offices in Irvine, the Honorable David Thompson, California Appellate Justice (Ret.), presiding.

32.     All parties submitted hundreds of pages of evidence as well as testimony from Prisco, Cook, Dr. Gupta, Constance Endelicato (Dr. Gupta's defense attorney, paid by CARE LLC), as well as insurance experts for both sides.

33.     On March 31, 2025, Justice Thompson issued his Verdict and Final Award, finding that CARE Inc. breached the implied covenant of good faith and fair dealing, and that it did so with malice, oppression or fraud or acted with a conscious disregard of the rights of Dr. Gupta, and awarded $5,415,885 Damages to Snover based upon the Judgment of August 15, 2023.

34.     Justice Thompson also awarded Dr. Gupta emotional distress damages in the amount of $5,000,000, as well as punitive damages in the amount of $25,000,000.

35.     The total damages awarded by Justice Thompson in the arbitration against CARE Inc. were $35,415,885. (the Arbitration Award). A copy of the Arbitration Award is attached hereto as Exhibit 1.

36.     On or about February 2, 2026, Snover and Dr. Gupta filed a request in the California Superior Court for the Arbitration Award be entered as a judgment against CARE Inc.

### CARE INC.'S LIQUIDATION AND THE ASSIGNMENT OF RIGHTS TO DR. GUPTA AND SNOVER

37.     After the Arbitration Award was entered, CARE Inc. had minimal assets and a $35,415,885. Arbitration Award against it. It was undercapitalized and underinsured.

38.     On April 8, 2025, CARE LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Kentucky, Case No. 25-30811-crn.

39.     On May 30, 2025, the State of Vermont Department of Financial Regulation filed a

1 Petition for Order of Liquidation for CARE Inc. in the Superior Court, Washington Unit, State of

2 Vermont. On July 3, 2025, Order of Liquidation was entered by said Court.

3 40.     Snover and Dr. Gupta made a claim for the Arbitration Award with the Vermont

4 Receiver.

5 41.     Snover and Dr. Gupta settled their claims against CARE Inc. and, as part of that

6 settlement, the Vermont Receiver assigned to Dr. Gupta and Snover any and all claims that

7 CARE Inc. may have against CARE LLC and its owners, stockholders, officers, directors,

8 employees, agents, attorneys, representatives, acting in their capacity as owners, stockholders,

9 officers, directors, employees, agents, attorneys, representatives of CARE LLC concerning

10 CARE LLC's handling of the Snover action.

## BACKGROUND ALLEGATIONS AS TO COOK AND POPE

42.     Upon information and belief, Plaintiffs allege that Cook and Pope, between them, are or

were the owners, directors, operators, agents, principals, or managers of at least 10 separate

limited-liability business entities registered across at least three different states. These include,

but are not limited to: Care Professional Liability Association, LLC (KY), Care Risk Retention

Group, Inc. (VT), Gaspe Financial Solutions, LLC (KY), Grand Palm Medical Associates, LLC

(FL), Grande Insurance Management, LLC (FL), HPC Financial Services, LLC (FL), HPC Real

Estate Holdings, LLC (KY), OB Insurance Managers, LLC (FL), Robert Pope Holdings, LLC

(FL), RGP Marketing, Inc. (FL), Care Insurance, LLC (KY), and Future Care Risk Retention

Group, Inc. (KY).

43.     Together, Cook and Pope own 100% of HPC Financial Services, Inc. (HPC Financial).

HPC Financial is a Florida entity whose business address is 13109 Eastpoint Park Blvd.,

Louisville, Kentucky 40223.

44.     Cook is a resident of Louisville, Kentucky but lists his address as 800 Evergreen Road,

Anchorage, Kentucky 40223 in HPC Financial' s filings with the Florida Secretary of State.

45.     Grand Palm Medical Associates, LLC (Grand Palm) is a Florida entity whose business

address is 13109 Eastpoint Park Blvd., Louisville, Kentucky 40223 and is also 100% owned and

1   controlled by Cook and Pope.

2   46.     In the Grand Palm filings with the Florida Secretary of State, Cook lists his address as

3   800 Evergreen Road, Anchorage, Kentucky 40223.

4   47.     Care Insurance, LLC (Care Ins.) is a Kentucky business entity located at 13109 Eastpoint

5   Park Blvd., Louisville, Kentucky 40223 and is also 100% owned and controlled by Cook and

6   Pope.

7   48.     In the business filings of Care Ins. with the Kentucky Secretary of State, Cook lists his

8   address is 13109 Eastpoint Park Blvd., Louisville, Kentucky 40223 which is the same as CARE

9   Inc. and CARE LLC's address.

10  49.     HPC Real Estate Holdings (HPC Real Estate) is a Kentucky business entity located at

11  13109 Eastpoint Park Blvd., Louisville, Kentucky 40223 and is 100% owned and controlled by

12  Cook and  Pope.

13  50.     Grande Insurance Management, LLC (Grande Insurance) is a Florida business entity with

14  its principal address located at 28517 Raffini Lane, Bonita Springs, Florida, 34135 and is 100%

15  owned and controlled by Cook and Pope. ***This organization was created in March of 2025, less***

16  ***than two weeks prior to the entry of the Arbitration Award against CARE Inc.***

17  51.     Future Care Risk Retention Group, Inc. (Future Care) is a Vermont captive insurance

18  company located at 2527 Nelson Miller Parkway #206, Louisville, Kentucky, 40223 and is 100%

19  owned and controlled by Cook and  Pope and is engaged in selling high risk liability insurance

20  for the medical profession.  Plaintiffs are informed and thereupon believe that Future Care, as a

21  captive insurer, is underfunded and undercapitalized, yet assumes all the business risk of the

22  insurance business as its premiums collected  directly flow to Cook and Pope leaving no assets

23  and therefore no recourse for creditors.

24  52.     Robert Pope Holdings, LLC (RPH) is a Florida entity located at 28517 Raffini Lane,

25  Bonita Springs, Florida, 34135 and is 100% owned by Pope. RPH is the owner of 50% of  HPC

26  Financial, Future Care and Care Ins.

27  53.     Gaspe Financial Solutions, LLC (Gaspe) is a Kentucky business entity owned by

28  Cook whose business address is in Anchorage, Kentucky. Gaspe is the owner of  50% of  HPC

**SECOND AMENDED COMPLAINT**

Financial, Future Care and Care Ins.

54.     Plaintiffs are informed, and believe and thereupon allege, that Defendants Cook and Pope were engaged in a pattern of forming and incorporating captive insurance companies that have no employees, that are kept undercapitalized for the business risks they undertake, that are uninsured or under-insured. Cook and Pope then organize and arrange a chain of shell companies that do nothing but charge the captive insurer for services that should have been performed by the captive insurers' employees, if they had any, for the sole purpose of draining the captive insurer of all capital by transferring the capital through a maze of business entities all owned and controlled by Cook and Pope and ultimately to Cook and Pope's individually owned companies for the purpose of defrauding foreseeable creditors for Cook and Pope's personal financial benefit.

55.     Plaintiffs allege that Cook and Pope directly controlled and exerted complete dominion over both CARE Inc. and CARE LLC, and that for each of them there was a unity of interest and ownership such that any individuality and separateness between the individuals and the companies ceased, so much so that obvious conflict of interests between the companies and themselves were ignored, and that each was the alter ego of the other.

56.     Plaintiffs allege that additional facts relating to the conduct of the owners, managers, operators, and directors of the CARE Entities, including Cook and Pope, especially as it relates to the transfer of assets out of the CARE Entities, are forthcoming, pending the discovery of and/or the purchase of assets which includes CARE LLC's records held by the bankruptcy estate of CARE LLC. Plaintiffs reserve the right to amend their allegations against all defendants pending the availability of this information. Plaintiffs are informed and believe, and thereupon allege, that Cook and Pope have wiped cleaned, erased and/or destroyed some of CARE LLC's computerized business and financial records thereby destroying evidence of the fraudulent transfers of money out of Care Inc. and CARE LLC, or any transfers of money to Cook and Pope personally and/or to the estate of their deceased partner, Dr. Hafendorfer or his widow.

**SECOND AMENDED COMPLAINT**

## ALTER-EGO ALLEGATIONS

57.     In the underlying, binding arbitration proceeding, Cook testified under oath that he is the President of CARE LLC and is paid by CARE LLC, and that he is the Vice-president of CARE Inc., an unpaid position, and that CARE LLC owns 100% of CARE Inc., and that although CARE Inc. has no employees, CARE Inc., the insurer, takes all the business risks.

58.     CARE LLC, Cook, and Pope let CARE Inc. take all the business risks and left it with no insurance for those risks, and with the minimum capital required by the State of Vermont to conduct insurance business, knowing that foreseeable tort liability, such as a bad faith judgment, would bankrupt the captive insurer, here, CARE Inc.

59.     For example, despite knowing from at least May 19, 2023 that CARE Inc. would be sued for bad faith failure to settle the underlying malpractice action against Dr. Gupta, and that the bad faith lawsuit would demand the amount of the over-limits judgment of approximately $6 million, plus the potential for an unknown amount of emotional distress and punitive damages, Cook and Pope never increased CARE Inc.'s capital reserves. Instead, they knowingly and intentionally kept CARE Inc. undercapitalized and under-reserved for what Cook and Pope then knew was CARE Inc.'s actual financial exposure. Instead of reserving an amount that recognized that exposure, Cook and Pope continued to drain CARE Inc. of capital by transferring money to CARE LLC and then to themselves directly or through entities controlled by them, or each of them and/or to or through the estate of Dr. Hafendorfer or Dr. Hafendorfer's widow. Clearly, this was done with the purpose and intent to defraud creditors. Cook and Pope ignored CARE Inc.'s capitalization and reserve needs, as they intended to bankrupt CARE Inc. and start a new company. Threats of bankruptcy were part of Cook and Pope's negotiating strategy.

60.     As a further example of Cook and Pope's indifference and breach of their fiduciary duties owed to CARE Inc., during the bad-faith arbitration, they allowed Snover and Gupta to enter into evidence, and to argue for damages for Gupta's emotional distress caused by the over-limits judgment, and to also argue and ask for punitive damages, despite both items of damages being specifically barred by the arbitration agreement.

61.     Further, neither Cook nor Pope sued CARE Inc's bad faith attorneys for allowing these

damages to come into evidence without objection, and to be then awarded without objection, because bankruptcy, and threats of bankruptcy, were part of their overall business strategy. In fact, they had already formed CARE Inc's successor so they did not bother to do anything to protect CARE Inc.

62. Cook, acting in his capacity as CARE LLC's President and CEO, signed a Program Management Services Agreement (PMSA) with CARE Inc., of which he was Vice-President. The PMSA provides that CARE LLC manages each and every aspect of CARE Inc.'s insurance business, including but not limited to:

   a. Providing all employees to run CARE Inc.'s insurance business, as CARE Inc. has no employees and relies upon CARE LLC to perform each and every task necessary for CARE Inc. to function as an ongoing insurance entity;

   b. Providing the physical location for CARE Inc.'s offices;

   c. Underwriting of CARE Inc.'s insurance program;

   d. Development, preparation, and dissemination of insurance policy forms and application forms for CARE Inc.;

   e. Preparation and issuance of insurance policies, endorsements, notices of cancellation, notices of nonrenewal, obtaining all information requested by CARE Inc., premium billing and collection, billing and collection of membership contributions, premium taxes and assessments in all activities related to the issuance of liability policies by CARE Inc.;

   f. Providing risk management support and coordinating with outside risk management programs for CARE Inc.;

   g. Monitoring and coordinating all claims activity including maintaining all claims and board action files, working with the third party administrator to monitor and settle claims, review and approving and monitoring all claims invoices, liaise with attorney panel, coordinating with HPC Financial on claims review and nurse paralegal review, maintaining and updating the litigation management policies and providing them to the attorney panel members, preparing materials and

organizing all claims committee meetings, reviews and monitor loss runs for accuracy, providing loss information to CARE Inc. and support on accounting for claims;

h. Soliciting business through direct marketing licensed insurance agents, electronic media, and other means for CARE Inc.;

i. Responsibility for compliance with policies, procedures and underwriting guidelines, rules, and rates approved by CARE Inc.;

j. Observing and compliance with all applicable laws, regulations, and rulings of applicable governmental agencies, bureaus or commissions;

k. Maintain offices in Louisville, Kentucky, staff such offices and maintain financial and underwriting data for CARE Inc.;

l. Payment of all expenses incurred in connection with underwriting, production, billing, accounting and services of the insurance business including but not limited to the cost of printing and producing policies, premium notices records and reports for CARE Inc.

63. Pursuant to the PMSA, CARE LLC was contractually obligated to indemnify and maintain liability insurance for any of its negligent acts or omissions, or that of persons under contract with CARE LLC, that damaged or caused harm to CARE Inc.

64. Upon information and belief, CARE LLC failed to maintain such liability insurance as required by the PMSA.

65. CARE LLC did everything that is traditionally associated with an insurer including managing all settlement activity. CARE Inc. did nothing whatsoever in the operation of its insurance business.

66. Although CARE Inc. acted as an insurer it did not handle or settle any claims. Instead, all claims-handling and settlement decisions were performed by CARE LLC through its claims committee.

67. At all times relevant hereto, CARE Inc.'s claims committee was 100% controlled and staffed by CARE LLC's President, Cook, by CARE LLC's Vice-President, Pope, and by CARE

1  LLC's Director of Claims Management, Prisco, and made all settlement decisions on all claims

2  against CARE Inc.

3  68.  In the underlying arbitration proceeding, Prisco testified under oath that he was a member

4  of the claims committee and that he was employed and paid by CARE LLC, and that the only

5  other members of the claims committee that handled Dr. Gupta's claim were Pope–CARE LLC's

6  Vice-President—and Cook, CARE LLC's President.

7  69.  In the underlying arbitration proceeding, Cook testified under oath that, as a member of

8  the claims committee, his main role was to solely represent CARE LLC, not CARE Inc.

9  70.  At all times relevant herein, the Board of Directors, officers, and employees of both

10  CARE LLC and CARE Inc. were either identical or extremely similar, and the companies failed

11  to uphold corporate formalities. These include, but are not limited to, the recording of minutes of

12  all claims committee meetings, and all decisions involved in handling and settling claims.

13  71.  At all times relevant herein, CARE LLC performed all underwriting functions for CARE

14  Inc. and set insurance premiums.  The only service which CARE Inc. performed was to collect

15  said insurance premiums to be turned over to CARE LLC.

16  72.  CARE Inc., as an empty shell, devoid of employees, served as nothing other than a

17  collection agency for CARE LLC.

18  73.  Both CARE LLC and CARE Inc. share or shared the same offices and facilities located at

19  13109 Eastpoint Park Blvd., Louisville, KY 40223.

20  74.  CARE LLC intentionally kept CARE Inc. undercapitalized with only the minimum

21  capital required by Vermont law in order for CARE Inc. to continue business operations.

22  75.  Pursuant to Vermont statues regulating CARE Inc., the State of Vermont does not cap the

23  capital or reserves that a Vermont registered Risk Retention Group must maintain, but sets a "not

24  less than" amount, but depends upon "the type, volume, and nature of insurance business

25  transacted."

26  76.  Here, CARE Inc. is in the business of selling medical malpractice insurance to, among

27  others, physicians engaged in obstetrics and gynecology (OBGYN) which is a high-risk medical

28  specialty with the potential for very high jury awards, well in excess of most insurance policies.

**SECOND AMENDED COMPLAINT**

1  Hence, CARE Inc. was wholly undercapitalized for the business risks it undertook.

2  77.     At all times relevant herein, and at all times during CARE Inc.'s existence, tort awards

3  against insurers are a part of the risk that every insurer faces. At all times relevant hereto, CARE

4  Inc. did not have sufficient capital to satisfy foreseeable tort awards, had insufficient funds, and

5  possessed no reinsurance or insufficient reinsurance to meet its potential tort obligations, as

6  Cook and Pope drained CARE Inc. and CARE LLC of all capital needed to adequately fund its

7  insurance business operations.

8  78.     At all times relevant herein, CARE LLC, Cook and Pope knew that CARE Inc. was

9  undercapitalized and intentionally allowed it to stay undercapitalized in order to increase profits

10  for CARE LLC and for its owners, officers, managers and employees, and to create a paradigm

11  in which creditors have little to no recourse to collect debts or judgments from CARE Inc. or

12  CARE LLC.

13  79.     CARE Inc. and CARE LLC are a single enterprise in that:

14          a.  The parent, CARE LLC, as alleged herein, performed all of the business activities

15              of CARE Inc. except collecting insurance premiums paid to CARE Inc.;

16          b.  Both CARE LLC and CARE Inc. are partners in a business operation that is in

17              competition with other insurers in numerous States;

18          c.  CARE LLC has complete control and influence over all of CARE Inc.'s

19              decisions;

20          d.  CARE Inc. does nothing but collect premiums to turn over to CARE LLC, all

21              other business activities are performed by CARE LLC;

22          e.  The business operations of CARE LLC and CARE Inc. are 100% integrated as

23              CARE Inc. has no employees;

24          f.  CARE LLC and CARE Inc. hold themselves out to the public as one entity and

25              engage in common marketing in that CARE Inc.'s insurance policy and Litigation

26              Manual has CARE LLC's name printed on it and no person or entity may buy

27              insurance from CARE Inc. unless they join CARE LLC;

28          g.  CARE Inc.'s Litigation Management Guidelines, which are sent to all defense

**SECOND AMENDED COMPLAINT**

attorneys hired to defend claims—as with Snover's claim against Dr. Gupta—is signed by Cook as "President & CEO" of "CARE Professional Liability Association, LLC."

h. CARE Inc. has exclusive rights to sell insurance in all States where CARE LLC markets insurance;

i. CARE Inc. and CARE LLC share the same offices in Louisville, Kentucky;

j. The ownership, both equitably and legally, of both CARE LLC and CARE Inc. is held by the same individuals, Cook and Pope, or entities owned or controlled by them;

k. CARE Inc. is undercapitalized and underinsured, and pursuant to the PMSA, CARE LLC is contractually obligated to maintain insurance for all claims handling errors and omissions;

l. The officers, managers and directors of CARE LLC and CARE Inc. are the same persons;

m. CARE Inc. has the sole right to sell insurance between the two CARE entities;

n. As alleged hereinbelow, CARE Inc.'s assets are diverted to CARE LLC and then immediately diverted to other entities 100% owned and controlled by Cook and Pope, such as HPC Financial, HPC Real Estate, Grand Palm, Care Ins, Grande Insurance, and ultimately to RPH and Gaspe, for the purpose of leaving CARE Inc. and CARE LLC as empty shells bearing all the business risks and defrauding its creditors, and also leaving CARE LLC under-insured and undercapitalized so as to defraud creditors;

o. The contract between CARE LLC and CARE Inc. was designed and drafted with the intent to shield the individuals, Cook and Pope, from liability in that it is the same people performing the tasks but through other entities owned by Cook and Pope to thwart creditors;

p. The use of CARE LLC by CARE Inc. to perform all insurance services was designed to transfer CARE Inc.'s assets to CARE LLC, to avoid liability to

15

creditors, and avoid meritorious claims and judgments by creating difficulty in collecting a judgment or a debt for the sole purpose of perpetrating a fraud against CARE Inc. and CARE LLC's creditors.

q. Cook and Pope already own and operate another Risk Retention Group, and in March of 2025, formed another insurance management company, Grande Insurance, which Plaintiffs are informed and believe will be used to create another Risk Retention Group to replace CARE Inc. and CARE LLC and continue their scheme.

80. Cook and Pope dominated and controlled both CARE LLC and CARE Inc.

81. Cook and Pope, through CARE LLC and various other entities that Cook and Pope own and control, stripped CARE Inc. and CARE LLC of their assets, leaving only the minimum amount of capital necessary to meet the minimum requirements of Vermont law, but insufficient to meet the needs set forth by the business risks undertaken by the CARE entities, as required by Vermont law.

82. After setting aside the minimum capital requirements of Vermont law related to a Risk Retention Group, the remainder of the insurance policy premiums that were collected by CARE Inc. were immediately forwarded to CARE LLC and then to other entities owned and controlled by Cook and Pope and ultimately distributed to them personally.

83. Plaintiffs allege that Cook and Pope used numerous entities that they own and control in order to charge CARE Inc. and CARE LLC for services but that these charges bear no resemblance to the value of the services provided.

84. Cook and Pope, using their complete  control of CARE LLC and CARE Inc. directly or through entities owned or controlled by them, have stripped both entities to mere shells that they believed to be judgment-proof. Cook and Pope have and did  threaten claimants and litigants with CARE Inc. and CARE LLC's judgment-proof status as a negotiating tactic when settling insurance claims.

85. Both CARE LLC and CARE Inc. are instrumentalities of each other and a conduit for a single business venture by Cook and Pope.

**SECOND AMENDED COMPLAINT**

86.     Cook and Pope use both CARE LLC and CARE Inc., the empty shells, as a shield to protect themselves from bad faith liability while it is they who engage in wrongful insurance bad faith conduct by handling all settlement decisions and failing to settle claims because CARE Inc. bears all the risk, yet has insufficient assets or insurance to cover those risks.

87.     CARE LLC is the alter ego of CARE Inc., and both entities are the alter ego of Cook and Pope.

88.     Cook and Pope simply change positions as managers, owners, and directors as they see fit.  Each has a different title for each entity, but they act as one, protecting themselves and not the entity.

89.     Since CARE LLC was in charge of claims handling and settlement, CARE Inc. should have cross-complained against CARE LLC for the bad faith case, but Cook and Pope would not authorize that action.

90.     CARE Inc. should have made a claim for indemnity against CARE LLC but again, Cook and Pope, because of their conflicts, would not authorize that claim.

91.     CARE Inc. should have had the protection of a CARE  LLC insurance policy under the terms of the PMSA and should have made a claim on CARE LLC's insurance policy, but again, upon information and belief, Cook and Pope would not authorize the purchase of such policy and expense thereof or refused to authorize a claim against such policy for CARE Inc.'s loss.

92.     Cook and Pope simply used the various entities, all either underinsured, uninsured, and/or under-capitalized, to protect themselves individually and direct the entities' attorneys to ignore their fiduciary obligations to the entity but instead to protect Cook and Pope personally, as well as to defraud creditors.

93.     Cook and Pope use the entities to contract with each other. This is evidenced by the employment contract filed in  the Bankruptcy Court by which Cook has made a claim against the bankruptcy estate of CARE LLC based on a self-serving contract signed by Pope on behalf of CARE LLC, an entity they directly or indirectly own and control and drove into bankruptcy. The existence of contracts between and among themselves is a subterfuge and was done with the intent to use the entity to shield themselves from the impact of their acts and to illegally transfer

**SECOND AMENDED COMPLAINT**

1    entity assets to themselves personally to defraud creditors.

2    94.     There is such unity of interest and ownership such that any individuality or separateness

3    between the various entities and Cook and Pope ceased to exist and each was the alter ego of the

4    other.

**CALIFORNIA LAW CONTROLLED THE ARBITRATION AND CONTROLS THIS ALTER EGO ACTION**

7    95.     The arbitration agreement between CARE Inc. and Dr. Gupta provides that California

8    law controls all disputes arising out of the insurance contract.

9    96.     California law controls this Action to pierce the corporate veil of CARE Inc. and CARE

10    LLC.

**FIRST CAUSE OF ACTION – Breach of the Implied Covenant of Good Faith and Fair Dealing**

(By All Plaintiffs Against CARE LLC, and DOES 1 Through 50, Inclusive, Including Robert Pope, Individually, and Gregory Cook, Individually, for Breach of the Implied Covenant  of Good Faith and Fair Dealing Based Upon the Alter Ego Doctrine)

18    97.     Plaintiffs reallege and incorporate herein by reference, as though fully set forth in full,

19    paragraphs 1 through 96 of this Second Amended Complaint hereinabove.

20    98.     As alleged hereinabove, on March 31, 2025, in issuing the Arbitration Award, Justice

21    Thompson found that CARE Inc. breached the implied covenant of good faith and fair dealing,

22    and that it did so with malice, oppression or fraud or acted with a conscious disregard of the

23    rights of Dr. Gupta.

24    99.     Justice Thompson awarded $5,415,885 Damages to Adria Snover based upon the

25    Judgment of August 15, 2023.

26    100.    Justice Thompson awarded Dr. Gupta emotional distress damages in the amount of

27    $5,000,000, and punitive damages in the amount of $25,000,000.

28    101.    The total damages awarded by Justice Thompson in the arbitration against CARE Inc.

1 were $35,415,885.

2 102. CARE LLC, Cook, and Pope attended the arbitration. Cook represented CARE LLC's

3 interests and Care Inc.'s interests, as well as his own, he testified. The bad faith matter was

4 fully litigated.

5 103. On or about February 2, 2026, the California Superior Court granted Plaintiffs' motion

6 that the Arbitration Award be entered as a judgment against CARE Inc.

7 104. Since CARE Inc. is liable for the judgment, then pursuant to the Alter Ego doctrine,

8 CARE LLC, Cook, and Pope are liable for the Arbitration Award and the Judgment.

9

10 **SECOND CAUSE OF ACTION – Negligence and Gross Negligence**

11 (By All Plaintiffs, Individually and as Assignees of CARE Inc., Against CARE LLC,

12 GREGORY COOK, as an Individual, ROBERT POPE, as an Individual, David Prisco, as an

13 Individual, and DOES 1 Through 50, Inclusive)

14

15 105. Plaintiffs reallege and incorporate herein by reference, as if fully set forth in full,

16 paragraphs 1 through 104 of this Complaint herein above.

17 106. Plaintiffs Adria Snover and Dr. Gupta are the assignees of any and all claims that

18 Care Inc. may have against CARE LLC or its owners, stockholders, officers, directors,

19 employees, agents, attorneys, representatives, acting in their capacity as owners, stockholders,

20 officers, directors, employees, agents, attorneys, representatives of CARE LLC concerning

21 CARE LLC's handling of the Snover action. Plaintiffs, holding the aforementioned assignment,

22 hereby bring this cause of action in their capacity as assignees of CARE Inc.

23 107. In entering into the PMSA with CARE Inc., CARE LLC and its officers,

24 directors, managers, and owners owed to CARE Inc. duties of care in executing and carrying out

25 their responsibilities under said agreement and in relation to undertaking the entirety of CARE

26 Inc's operational responsibilities. In executing the agreement, CARE Inc. effectively delegated

27 all of its insurance functions and day to day operations to CARE LLC, giving rise to specialized

28 independent, and professional duties (beyond the written contract) and/or implied covenants,

19
**SECOND AMENDED COMPLAINT**

1  owed to CARE Inc. by CARE LLC and those actually in charge of making management

2  decisions, such as Cook, Pope and Prisco.

3  108.    Cook, Pope and Prisco, as officers and managers, of CARE, LLC are personally liable for

4  their own negligence and tortious conduct.

5  109.    CARE LLC, and Cook, Pope and Prisco, as the actual parties who carried out all day-to-

6  day operations of CARE Inc.'s insurance business, failed to act with due care.

7  110.    Cook, Pope and Prisco, as managers, officers, and/or directors of CARE LLC, violated

8  the duties they owed to CARE Inc. in several ways, including but not limited to: continually

9  undercapitalizing the business for the risks they specifically elected to undertake, failing to

10  exercise due care in the handling of the underlying Medical Malpractice action including against

11  the advice of retained counsel, and failing to obtain sufficient insurance and/or reinsurance

12  policies for the risks of the business they were conducting.

13  111.    In addition to the above, Cook and Pope intentionally and deliberately, with personal and

14  individualized self-interest in mind, removed funds and assets from the CARE Entities, passing

15  them through to other limited-liability organizations held by each of them, respectively. In

16  addition, Cook had a personal vested interest in minimizing amounts paid on claims, as he would

17  receive bonuses based on how little CARE Inc. would pay in settling such claims. As a result,

18  Cook and Pope's actions directly, proximately, actually, and legally resulted in

19  undercapitalization and the eventual harm to CARE Inc. for their (Cook and Pope's) own

20  personal and financial gain, making them individually and personally liable for having done so.

21  As a direct, proximate, actual, and legal result of the actions of Cook ,Pope and Prisco, CARE

22  Inc. was foreseeably caused to be liable for over $35 million in damages for bad faith, as well as

23  left thousands of physicians and medical professionals uninsured, requiring CARE Inc. to be

24  placed in receivership under the laws of the State of Vermont. As a direct, proximate, actual, and

25  legal result of the financial obligations generated by the breaches of duty by Cook, Pope, Prisco

26  and CARE LLC, CARE Inc. was entered into liquidation proceedings by the Liquidator

27  appointed to it by the State of Vermont, causing serious and irreparable financial harm to CARE

28  Inc., in an amount to be shown according to proof at trial.

**SECOND AMENDED COMPLAINT**

112.   It was and should have been reasonably foreseeable to Pope, individually, and Cook, individually, that failure to act in a reasonable manner exercising appropriate care and adhering to accepted standards in operating and controlling their network of entities could cause harm to Dr. Gupta and Snover, and others similarly situated.

113.   Pope, individually, and Cook, individually, did in fact fail to act in a reasonable manner exercising appropriate care and adhering to accepted standards in operating and controlling the organization Pope and Cook controlled.

114.   Pope, individually, and Cook, individually, intentionally, recklessly and negligently breached their duties to Dr. Gupta and to Snover causing each, separately, to suffer damages in an amount to be shown according to proof at trial.

115.   The intentional, reckless and negligent actions of Pope, individually, and Cook, individually, were of such severity and of such scope that their actions constitute gross negligence and Dr. Gupta and Snover may therefore recover punitive damages in addition to compensatory damages for the injuries they suffered.

## THIRD CAUSE OF ACTION – Contractual Indemnity

(By All Plaintiffs, as Assignees of CARE Inc., Against CARE LLC, and DOES 1 Through 50, Inclusive)

116.   Plaintiffs reallege and incorporate herein by reference, as if fully set forth in full, paragraphs 1 through 115 of this Complaint herein above.

117.   Plaintiffs Adria Snover and Dr. Gupta are the assignees of any and all claims that CARE Inc. may have against CARE LLC or its owners, stockholders, officers, directors, employees, agents, attorneys, representatives, acting in their capacity as owners, stockholders, officers, directors, employees, agents, attorneys, representatives of CARE LLC concerning CARE LLC's handling of the Snover action. Plaintiffs, holding the aforementioned assignment, hereby bring this cause of action in their capacity as assignees of CARE Inc.

118.   On or about December 31, 2018, CARE Inc. entered into the aforementioned PMSA by written contract with CARE LLC. By this written contract, CARE LLC agreed to manage CARE

1  Inc.'s liability insurance program for a self-renewing term of five years absent written notice to
2  the other party at least 60 days prior to the expiration of the five-year term. As material terms
3  and conditions of this contract, CARE LLC and CARE Inc. agreed to indemnify and hold the
4  other harmless for all losses and costs, arising out of any negligent act, error, or omission of the
5  other, or persons under contract with the other, in the performance of each other's respective
6  performance and responsibilities under the contract.

7  119.    The PMSA was in place during the underlying Medical Malpractice action and the
8  underlying Arbitration, continuing through the present.

9  120.    In the course of its management and handling of CARE Inc.'s insurance operations
10  pursuant to the PMSA, CARE LLC's directors, operators, managers, employees, and/or agents,
11  including Pope, Cook, and Prisco, acted in a negligent manner, or failed to act, leading to the
12  Arbitration Award in March of 2025 against CARE Inc. in the amount of $35,415,885, which
13  included punitive damages and emotional distress damages, and which is accruing interest.

14  121.    Plaintiffs, as Assignees of the interest of CARE Inc., are entitled to indemnity of CARE,
15  LLC for this liability, as well as for any costs necessarily and reasonably incurred, to include
16  attorney's fees and other legal costs, to be shown in an amount according to proof at trial.

17  122.    By reason of the foregoing, Plaintiffs, as Assignees of CARE Inc., are entitled to be
18  indemnified by the Defendant, CARE LLC, in an amount according to proof at trial, by the terms
19  of the agreement between Care Inc. and CARE LLC.

20  123.    Additionally, by the above reference assignment of the claims of CARE Inc. to Plaintiffs
21  by the Vermont Receiver, Plaintiffs are entitled to recover from CARE LLC unearned
22  commissions in the amount of $337,110.

### FOURTH CAUSE OF ACTION – Breach of Fiduciary Duty

(By All Plaintiffs, as Assignees of CARE Inc., Against GREGORY COOK, as an Individual,
ROBERT POPE, as an Individual, David Prisco, as an Individual, and DOES 1 Through 50,
Inclusive)

124.    Plaintiffs reallege and incorporate herein by reference, as if fully set forth in full,

22

**SECOND AMENDED COMPLAINT**

paragraphs 1 through 123 of this Complaint herein above.

125.    Plaintiffs are the assignees of any and all claims that CARE Inc. may have against CARE LLC or its owners, stockholders, officers, directors, employees, agents, attorneys, representatives, acting in their capacity as owners, stockholders, officers, directors, employees, agents, attorneys, representatives of CARE LLC concerning CARE LLC's handling of the Snover action. Plaintiffs, holding the aforementioned assignment, hereby bring this cause of action in their capacity as assignees of CARE Inc.

126.    Under the PMSA signed by Cook on behalf of CARE LLC, CARE LLC agreed to undertake the management responsibilities connected with the operation and maintenance of CARE Inc.'s insurance business. As agents of CARE Inc., CARE LLC, Cook, Pope and Prisco, as directors, officer, managers and/or employees of CARE, LLC were bound by fiduciary duties to their principal, above the express duties provided in the PMSA. Among these duties are the duty of loyalty, including the avoidance of self-dealing, duty to safeguard the principal's money and property, duty to obey lawful instructions, and the duty to keep and provide accurate books and records.

127.    In the course of their management of CARE Inc.'s insurance business, Cook and Pope, as owners directly or through their companies, and Cook, Pope and Prisco, as directors, officers, managers and/or employees of CARE LLC, prioritized self-interest as opposed to the health and financial security of either of the CARE Entities creating clear and repeated conflicts which Cook, Pope and Prisco ignored for their personal benefit.

128.    Cook and Pope, through the process of minimizing the amount of capital held within both CARE Inc. and CARE LLC, removed and funneled funds to their affiliated and/or unaffiliated accounts for personal gain, leading to the financial devastation of CARE Inc. and CARE LLC.

129.    Plaintiffs allege, on information and belief, that Cook and Pope destroyed, altered, or otherwise improperly disposed of relevant financial records which evidence the movement of funds which were extracted from CARE Inc. and/or CARE LLC. Further, Cook and Pope, following the death of their former partner, Dr. Hafendorfer, wrongfully distributed funds held by the CARE Entities to Dr. Hafendorfer's estate or his widow, in fraud of creditors of the

**SECOND AMENDED COMPLAINT**

1    CARE Entities.

2    130.    These actions undertaken by Cook, Pope, Prisco and CARE LLC breached their fiduciary

3    duties and were the direct, proximate, and legal causes of damages suffered by CARE Inc., to be

4    shown in an amount according to proof at trial.

5

6                    **FIFTH CAUSE OF ACTION – Conversion**

7        (By All Plaintiffs, as Assignees of CARE Inc., Against GREGORY COOK, as an Individual,

8              ROBERT POPE, as an Individual, and DOES 1 Through 50, Inclusive)

9

10   131.    Plaintiffs reallege and incorporate herein by reference, as if fully set forth in full,

11   paragraphs 1 through 130 of this Complaint herein above.

12   132.    Plaintiffs are the assignees of any and all claims that CARE Inc. may have against CARE

13   LLC or its owners, stockholders, officers, directors, employees, agents, attorneys,

14   representatives, acting in their capacity as owners, stockholders, officers, directors, employees,

15   agents, attorneys, representatives of CARE LLC concerning CARE LLC's handling of the

16   Snover action. Plaintiffs, holding the aforementioned assignment, hereby bring this cause of

17   action in their capacity as assignees of CARE Inc.

18   133.    Defendants Cook and Pope, for personal gain, extracted from CARE LLC and CARE Inc.

19   funds which were intended to serve as reserves and/or capital in order to carry out and operate

20   the business operations of both Care Entities. CARE Inc. received tens of millions of dollars

21   annually in premiums, yet at the time of the Receivership action , held only minimal assets and

22   capital, requiring the liquidation of CARE Inc. and leaving considerable exposure and unpaid

23   debts.

24   134.    As a result of the conversion of these funds into other accounts in which Cook and Pope

25   held an interest for their personal use, CARE Inc. has suffered damages in an amount according

26   to proof to be shown at trial.

27

28

**SECOND AMENDED COMPLAINT**

## <u>SIXTH CAUSE OF ACTION – Voidable Transfers</u>

(By All Plaintiffs, Individually, and as Assignees of CARE Inc., Against GREGORY COOK, as an Individual, ROBERT POPE, as an Individual, and Care Professional Liability Association, L.L.C., a Kentucky Limited Liability Corporation, and DOES 1 Through 50, Inclusive)

135.    Plaintiffs reallege and incorporate herein by reference, as if fully set forth in full, paragraphs 1 through 134 of this Complaint herein above.

136.    Plaintiffs and  CARE Inc. possess rights to payment from the Defendants, Cook, Pope, and CARE LLC.

137.    Snover and Dr. Gupta are creditors of CARE Inc. pursuant to the Arbitration Award and the Judgment.

138.    CARE LLC, Pope, and Cook, both before and after the entry of the Arbitration Award in favor of the Plaintiffs, transferred funds from CARE LLC into other bank accounts  in which they had an interest, knowing that the CARE Entities faced potential or actual liabilities.

139.    These transfers included, among others, transfers of money and assets to the estate or widow of Dr. Hafendorfer in fraud of creditors.

140.    CARE LLC and its officers, owners, managers, directors, or agents, including Cook and Pope, were aware that likely or actual liabilities existed prior to, during, and after transfers of property were made, intending to hinder, delay, or defraud the individuals and/or entities to whom money was owed or likely to be owed, or without reasonably equivalent value, in such amounts to be determined.

141.    Plaintiffs and CARE Inc. were harmed, as an actual, proximate, and legal result of said transfers.

142.    Plaintiffs and CARE Inc. were harmed in an amount to be shown according to proof at trial as a result of these transfers.

**SEVENTH CAUSE OF ACTION – Accounting**

(By All Plaintiffs, as Assignees of CARE Inc., Against Care Professional Liability Association, L.L.C., a Kentucky Limited Liability Corporation, and DOES 1 Through 50 Inclusive)

143.    Plaintiffs reallege and incorporate herein by reference as if fully set forth in full paragraphs 1 through 142 of this Second Amended Complaint herein above.

144.    Pursuant to the PMSA, CARE Inc. is entitled to receive a complete and true accounting from Care LLC.

145.    An amount is due from CARE LLC to CARE Inc. as a result of the PMSA between the two entities, and arising from contractual and extracontractual duties, including fiduciary duties, owed by CARE LLC to CARE Inc.

146.    An accounting is necessary to determine the balance owed from CARE LLC to CARE Inc. and to determine where all insurance premiums collected by CARE Inc. were distributed,

147.    CARE LLC's failure to provide an accounting has significantly harmed CARE Inc.'s interests in collecting or seeking the amounts owed.

148.    Plaintiffs, as Assignees, seek an accounting as required by law and equity and under the PMSA to determine where CARE LLC transferred Care Inc's capital and to remedy any injuries suffered as a failure to provide said accounting.

**EIGHTH CAUSE OF ACTION – Declaratory Relief**

(By All Plaintiffs Against CARE LLC and DOES 1 Through 50 Inclusive, Including Robert Pope and Gregory Cook Based Upon Alter Ego Liability

149.    Plaintiffs reallege and incorporate herein by reference as if fully set forth in full paragraphs 1 through 148 of this Second Amended Complaint herein above.

150.    Dr. Gupta was an insured under a policy of insurance issued by CARE Inc.

151.    On or about August 15, 2023, after a jury trial, an over-limits verdict was entered against Dr. Gupta and in favor of Snover.

152. Dr. Gupta assigned the judgment to Snover while retaining for herself her personal claims for damages for emotional distress and punitive damages against CARE Inc.

153. After a week-long arbitration hearing with The Honorable David Thompson, Ret., Justice Thompson issued the Arbitration Award in Dr. Gupta and Snover's favor and against CARE Inc. as follows:

    a.    $5,415,885 Damages for Snover.

    b.    $5,000,000 to Dr. Gupta for Emotional Distress.

    c.    $25,000,000 to Dr. Gupta for Punitive Damages.

154. An actual controversy has arisen and now exists between Dr. Gupta and Snover on the one hand and CARE Inc., CARE LLC, Cook and Pope on the other, and each of them, relating to their respective rights, responsibilities, duties and obligations under the CARE INC. Policy.

155. In accordance with California law, CARE LLC is liable for all promises made to Dr. Gupta in the Policy and for all awards and judgments entered against CARE Inc. in the March 31, 2025 Arbitration Award and Judgment.

156. Plaintiffs contend that CARE LLC is the alter ego of CARE Inc and is therefore liable and responsible for all of CARE Inc.'s debts including the March 31, 2025 Plaintiffs contend that the owners of CARE LLC and CARE Inc, including Cook and Pope, are the same persons, are alter egos of each other, and that the Director of Claims for CARE Inc. and CARE LLC is the same person.

157. Plaintiffs contend that Cook, Pope and Prisco, are all directors, officers, employees and /or agents of both CARE Inc and CARE LLC, and govern both CARE Entities and control and influence all decisions in both CARE Entities.

158. Plaintiffs contend that CARE Inc. has no employees but is wholly controlled by CARE LLC's owners Cook and Pope, or through entities owned or controlled by Cook and Pope.

159. Plaintiffs contend that Cook and Pope intentionally kept CARE Inc. undercapitalized with insufficient capital to meet CARE Inc.'s obligations by transferring CARE Inc.'s capital to CARE LLC, and then ultimately to themselves, and that they have reduced CARE Inc. to a

**SECOND AMENDED COMPLAINT**

corporate shell that is incapable of meeting its liability needs and that the working capital Cook, Pope and CARE LLC leaves to CARE Inc. is trifling compared to the potential business risks of CARE Inc. and is insufficient to meet CARE Inc.'s obligations.

160.     Plaintiffs contend that both CARE Inc. and CARE LLC also share the same address.

161.     Plaintiffs contend that CARE LLC and CARE Inc. have identical Board of Directors, Officers and agents and as such fail to uphold corporate formalities in all decisions.

162.     Plaintiffs contend that the operations of Cook, Pope, and CARE LLC on the one hand and CARE Inc. on the other, are commingled and the transactions between themselves are not at arms-length in that CARE LLC uses CARE Inc. solely as a vehicle to collect premiums that are set by CARE LLC, thereby making CARE LLC the actual insurer.

163.     Plaintiffs contend that the operations between Cook and Pope on the one hand and CARE LLC and CARE Inc. on the other are commingled and the transactions between themselves are not at arms-length in that both Robert Pope and Greg Cook engage in behavior designed to maximize their personal profit while leaving CARE Inc. undercapitalized, under-insured, and unable to meet its potential obligations yet holding all the business risks.

164.     Plaintiffs contend that Cook and Pope engage in other business ventures similar to both CARE Inc. and CARE LLC and that they use the same facility, same bank, same employees, same officers and agents such that their business operations are one and the same.

165.     Plaintiffs contend that CARE Inc. and CARE LLC use the same facility, same bank, same employees, same officers and agents such that their business operations are one and the same.

166.     Plaintiffs contend that Cook and Pope use both CARE LLC and Care Inc. as a mere shell, instrumentality, or conduit as a single venture that they own and control.

167.     Plaintiffs contend that CARE LLC uses CARE Inc. as a mere shell, instrumentality or conduit for a single venture and that CARE LLC controls all aspects of CARE Inc.'s business and its operations.

168.     Plaintiffs contend that the use of separate entities was an intentional act designed so that Cook and Pope may misuse the corporate form for wrongful purposes, such as engaging in

1  bad faith insurance practices while leaving CARE Inc. undercapitalized and underinsured for

2  the purpose of evading responsibilities and defrauding creditors.

3  169.    Plaintiffs contend that there is it has already been determined by the Arbitrator that Pope,

4  Cook and Prisco engaged in fraudulent transactions or misrepresentations, with malice,

5  oppression and fraud, related to CARE Inc.'s obligation to indemnify Dr. Gupta and that at no

6  time did they ever intend to pay, nor did they pay, Dr. Gupta's policy limits, or what was left on

7  Dr. Gupta's eroding policy limits, to settle Snover's claim against her.

8  170.    Plaintiffs contend that instead of honoring its contractual obligations to its insureds,

9  CARE Inc., and its agent, CARE LLC, controlled by Cook, Pope and Prisco, intentionally

10  make low-ball settlement offers to claimants, have never paid any policy limits for any claims,

11  while threatening claimants that they will spend all of the available indemnity limits on defense

12  costs and attorneys' fees so as to leave the insured, and Dr. Gupta, with no money for

13  indemnity, and leaving the claimant with no insurer to collect from.

14  171.    Plaintiffs contend that instead of honoring its contractual obligations to its insureds,

15  Cook, Pope, Prisco, CARE LLC and CARE Inc. improperly use the corporate veil, along with

16  the threats of bankruptcy, as a defense to paying claims against their insureds.

17  172.    Dr. Gupta contends that given the alter ego status, it would be an injustice to allow

18  Pope, Cook**,** CARE LLC and CARE Inc. to escape their financial obligations and responsibility

19  to creditors and is therefore an abuse of the entity and Plaintiffs should be permitted to pierce

20  the corporate veil of CARE LLC and reach the assets of Cook and Pope and the entities

21  through  which Cook and Pope own and control CARE LLC to satisfy the debts and other

22  financial obligations of CARE Inc., including the March 31, 2025 verdict, the Arbitration

23  Award  and the judgment arising out of the Arbitration Award.

24  173.    Plaintiffs also contend that CARE Inc. requires its physician insureds to become

25  members of CARE LLC as a pre-requisite to obtaining insurance from CARE Inc.

26  174.    Plaintiffs contend that this dispute related to alter ego status is governed by California

27  law.

28  175.    Plaintiffs desire a declaration of their rights with respect to the above stated

**SECOND AMENDED COMPLAINT**

contentions. Such a declaration is necessary and appropriate at this time in order that Plaintiffs may pierce the corporate veil of CARE LLC, hold CARE LLC, Cook and Pope joint and severally liable for the March 31, 2025 Arbitration Award and judgment.

176. A declaration by this Court is both necessary and proper in order to set forth and determine all rights, responsibilities, obligations, liabilities and duties which may exist between the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief herein as follows:

**FIRST CAUSE OF ACTION - Breach of the Implied Covenant of Good Faith and Fair Dealing**

That Judgment be entered in their favor against Pope, individually, Cook, individually, and any and all DOE Defendants as such may be identified by discovery, for the amounts of the Judgment in favor of Plaintiffs against CARE Inc. and Plaintiffs' Proof of Claim in the CARE LLC Bankruptcy:

1. $5,415,884 of compensatory damages in favor of Andrea Snover;
2. $5,000,000 of compensatory damages in favor of Dr. Gupta;
3. $25,000,000 of punitive damages in favor of Dr. Gupta
4. For statutory interest on those amounts.

With all Defendants against whom Judgment shall be entered being jointly and severally liable for the amounts set forth above.

**SECOND CAUSE OF ACTION – Negligence and Gross Negligence**

That Judgment be entered in favor of Plaintiffs against Cook, individually, and Pope, individually, and Prisco, individually, as follows:

1. For compensatory damages caused by the negligence of each in an amount according to proof at trial; and,
2. For punitive damages for the intentional, reckless and/or grossly negligent actions of each in an amount as determined by proof at trial

**THIRD CAUSE OF ACTION – Contractual Indemnity**

CARE Inc. having filed its Proof of Claim in the Bankruptcy of Debtor, Care LLC and all such claims having been assigned to Plaintiffs, Plaintiffs now pray for entry of Judgment in favor of Plaintiffs, as assignees of CARE Inc., against CARE LLC for all amounts set forth therein and any other amounts according to proof at trial.

**FOURTH CAUSE OF ACTION – Breach of Fiduciary Duty**

CARE Inc. having assigned all claims to Plaintiffs, Plaintiffs now pray for entry of Judgment in favor of Plaintiffs, as assignees of CARE Inc., against Cook, individually, and Pope, individually, as follows:

1.    For compensatory damages caused to be suffered by CARE Inc. by the breach of fiduciary duties by each in an amount according to proof at trial; and,

2.    For punitive damages for intentional, reckless and/or gross actions in breach of the fiduciary duties of each in an amount as determined by proof at trial

**FIFTH CAUSE OF ACTION – Conversion**

CARE Inc. having assigned all claims to Plaintiffs, Plaintiffs now pray for entry of Judgment in favor of Plaintiffs, as assignees of CARE Inc., against Cook, individually, and Pope, individually, as follows:

1.    For all amounts according to proof at trial for amounts wrongfully converted by either from the funds of CARE Inc.; and,

2.    For any other damages determined by proof at trial

**SIXTH CAUSE OF ACTION - Avoidable Transfers**

That Judgment be entered in favor of Plaintiffs against Cook, individually, Pope, individually, and each and all DOE Defendants as such may be identified through discovery or otherwise for all such amounts received by them as established by proof at trial for funds improperly and unlawfully transferred by CARE Inc. and CARE LLC.

**SECOND AMENDED COMPLAINT**

**SEVENTH CAUSE OF ACTION – Accounting**

CARE Inc. having assigned all claims to Plaintiffs, Plaintiffs pray for entry of an Order or Judgment, in equity, in favor of Plaintiffs, as assignees of CARE Inc., for a full accounting to be provided by and on behalf of Cook, individually, Pope, individually, CARE LLC and any and all DOE Defendants that have at any time performed services for or received funds from CARE LLC since the earliest date Dr. Gupta paid premiums to become an insured of CARE Inc.

**EIGHTH CAUSE OF ACTION – Declaratory Relief**

Plaintiffs pray for entry of an Order or Judgment, in equity, as follows:

1.     There exists a unity of control and ownership between CARE LLC and CARE INC, such that resulting injustices will occur if the corporate veil is not pierced;

2.     There exists a unity of control and ownership between Greg Cook  and Robert Pope and on the one hand and CARE Inc and CARE LLC on the other hand such that the CARE Entities and its owners are indistinguishable from each other such that resulting injustices will occur if the corporate veil is not pierced;

3.     Greg Cook and Robert Pope have used the corporate form to perpetrate fraud, circumvent the law, and/or avoid personal liability in order to shield themselves from personal liability while engaging in wrongful conduct;

4,     An injustice will result if the veil is not pierced and CARE LLC and Robert Pope and Greg Cook were allowed to escape liability for their actions;

5.     Alter ego liability may be imposed on CARE LLC for the acts of CARE Inc.; and

6.     Alter ego liability may be imposed on Greg Cook and Robert Pope for the acts of CARE LLC and CARE Inc.

**SECOND AMENDED COMPLAINT**

**ON ALL CAUSES OF ACTION**

      1.      For general damages in an amount according to proof;

      2.      For special damages according to proof;

      2.      All costs and Attorneys' fees;

      3.      For interest, including pre-judgment interest;

      4.      For costs of suit incurred herein; and

      5.      For such other further relief as the Court may deem just and proper.


DATED:  : February 20, 2026      LAW OFFICES OF BRUCE G. FAGEL & ASSOCIATES

By */s/ Bruce G. Fagel*_____
    Bruce G. Fagel,
    Attorneys for Plaintiff, ADRIA SNOVER, by and through her Guardian ad Litem JORDAN CALLIHAN

DATED: February 20, 2026      LAW OFFICES OF MARSHALL SILBERBERG

By */s/ Marshall Silberberg*_____
    Marshall Silberberg
    William Collins
    Attorneys for Plaintiff, ARUNA GUPTA, M.D.

DATED: February 20, 2026      ANGELO & DI MONDA

By */s/ Joseph Di Monda*_____
    Joseph Di Monda
    Attorneys for Plaintiff, ARUNA GUPTA, M.D.

**SECOND AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

DATED: February 20, 2026       LAW OFFICES OF BRUCE G. FAGEL &
ASSOCIATES

By */s/ Bruce G. Fagel*         
   Bruce G. Fagel,
   Attorneys for Plaintiff, ADRIA SNOVER, by
   and through her Guardian ad Litem JORDAN
   CALLIHAN

DATED: February 20, 2026       LAW OFFICES OF MARSHALL SILBERBERG

By */s/ Marshall Silberberg*     
   Marshall Silberberg
   William Collins
   Attorneys for Plaintiff, ARUNA GUPTA,
   M.D.

DATED: February 20, 2026       ANGELO & DI MONDA

By */s/ Joseph Di Monda*       
   Joseph Di Monda
   Attorneys for Plaintiff, ARUNA GUPTA,
   M.D.

# Exhibit 1

ADRIA SNOVER, BY AND THROUGH HER GUARDIAN AD
LITEM JORDAN CALLIHAN; AND, ARUNA GUPTA, M.D.,

Claimants,

and

CARE RISK RETENTION GROUP, INC,

Respondent.

## FINAL AWARD

<u>Counsel</u>:

Counsel for Claimant Adria Snover, by and through her GAL, Jordan Callihan:

Bruce Fagel, Esq.
L/O Bruce G. Fagel and Associates
9200 West Sunset Boulevard, Suite 670
West Hollywood, CA 90069
Tel: (310) 516-9035

Counsel for Claimant Aruna Gupta, M.D.:

Marshall Silberberg, Esq.
William Collins, Esq.
L/O Marshall Silberberg PC
3121 Michelson Drive, Suite 525
Irvine, CA 92612
Tel: (949) 718-0960

Joseph Di Monda, Esq.
Angelo & Di Monda
1721 N. Sepulveda Blvd.
Manhattan Beach, CA 90266-5014
Tel: (310) 939-0099

Counsel for Respondent Care Risk Retention Group, Inc.:

Robert Benjamin, Esq.
Michael Gulotta, Esq
Kaufman Borgeest & Ryan LLP
200 Summit Lake Dr.
Valhalla, NY 10595
Tel: (914) 741-61009
Email: bsemenza@kbrlaw.com, rbenjamin@kbrlaw.com

Arbitrator:

Hon. David A. Thompson (Ret.)
JAMS
5 Park Plaza, Suite 400
Irvine, CA 92614
714-939-1300

Place of Arbitration: JAMS, 5 Park Plaza, Suite 400 Irvine, CA 92614.

Court Reporters: Linda Nickerson, CSR # 8746; Heidi Hummel-Grant, CSR # 12556.

Agreement to Arbitrate: This arbitration was ordered on the Stipulation of the parties in Riverside County Superior Court Case No. CVRI2303467 (the "RCSC Case").

Applicable Law and Rules: The Stipulation provides the JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rules") shall govern this arbitration. The substantive law (including the law of remedies) of the State of California applies to this arbitration.

Claims and Arbitrability: This arbitration concerns the claims in the Demand for Arbitration Claimants submitted to JAMS, including only the First Cause of Action (Breach of Implied Covenant) in the First Amended Complaint attached thereto and previously filed in the RCSC Case; and the Response to Arbitration Demand Respondent submitted to JAMS. The parties agreed the Stipulation encompasses all these claims.

Testifying Witnesses: David Prisco, Gregory Cook, Christopher Miller, Bruce Fagel, Vicki Roberts (expert), Christine Kehoe (expert), and Constance Endelicato.

Exhibits: All exhibits offered were admitted without objection, except Exhibits 116, 118, and 119, which were admitted over Respondent's objections as stated on the record.

Dates of Live Hearing: March 24, 25, 26, 27, and 28, 2025.

Form of the Award: All parties agreed Arbitrator "will enter a bare award, which is the equivalent of a jury verdict" in the form attached as Exhibit A. (SO1, ¶ 11(f); Hrng. Tr. 3-28) So, this Final Award shall not contain a statement of reasons. (JAMS Rule 19(g).)

THE UNDERSIGNED ARBITRATOR, having been designated by JAMS accordance with Stipulation and Order in the RCSC Case, and having examined the claims, evidence, and arguments of the parties, hereby finds, rules, orders, and issues this Final Award in favor of Claimants and against Respondent, in the stipulated form agreed to by the parties (see JAMS Rule 19(g) - statement of reasons not required) as follows:

1.      Did CARE RISK RETENTION GROUP, INC., breach the Implied Covenant of Good Faith and Fair Dealing? **YES.**

2.      Did ARUNA GUPTA, M.D., suffer emotional distress as a result of CARE RISK RETENTION GROUP, INC.'s breach of the Implied Covenant of Good Faith and Fair Dealing? **YES.**

3.      Did CARE RISK RETENTION GROUP, INC., breach the Implied Covenant of Good Faith and Fair Dealing with malice, oppression or fraud, or act with a conscious disregard of the right of ARUNA GUPTA, M.D? **YES.**

I award ADRIA SNOVER, by and through her Guardian ad Litem JORDAN CALLIHAN the following damages:

**$5,415,885** Damages are the Judgment of August 15, 2023, or as modified by the Court of Appeal.[1]

I award ARUNGA GUPTA, M.D., the following damages (Emotional Distress): **$5,000,000**

I award ARUNA GUPTA, M.D., the following punitive damages: **$25,000,000**

TOTAL DAMAGES
**$35,415,885**

4.      This Final Award resolves all claims submitted to arbitration and shall be considered final, for purposes of a judicial proceeding to enforce, modify or vacate, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Final Award. (JAMS Rule 19 (i) and (j).)

Dated: March 30, 2025

_____
Hon. David A Thompson (Ret.)
Arbitrator

---

[1] The $5,415,885 includes the damages ($4,353,225) plus prejudgment interest ($1,062,660) awarded in the underlying action judgment (Ex. 99) entered on December 8, 2023 (not August 15, 2023), but excludes the costs awarded (Ex. 137) on March 29, 2024. This judgment is not yet final because it was appealed. It is Arbitrator's intent to award Snover the full amount of the final judgment to be entered following remittitur.

3

## EXHBIT A – STIPULATED FORM OF AWARD

## IN THE MATTER OF ARBITRATION BETWEEN

| | |
|---|---|
| ADRIA SNOVER, by and through her Guardian ad Litem JORDAN CALLIHAN; and, ARUNA GUPTA, M.D., | ARBITRATION NO. 5200001211 |
| Claimants, | **JOINT GENERAL VERDICT FORM** |
| v. | |
| CARE RISK RETENTION GROUP, INC, a Kentucky corporation; | |
| Respondents. | |

1. Did CARE RISK RETENTION GROUP, INC., breach the Implied Covenant of

   Good Faith and Fair Dealing?

   _____Yes _____No

(If you answered YES, please answer Questions 2 & 3; If you answered NO, please stop and sign.)

2. Did ARUNA GUPTA, M.D., suffer emotional distress as a result of CARE RISK

   RETENTION GROUP, INC.'s breach of the Implied Covenant of Good Faith and

   Fair Dealing?

   _____ Yes _____ No

3. Did CARE RISK RETENTION GROUP, INC., breach the Implied

Covenant of Good Faith and Fair Dealing with malice, oppression or fraud, or act with a

conscious disregard of the right of ARUNA GUPTA, M.D?

   _____ Yes _____ No

(Complete the section below only if you answered YES to Question 1, 2 or 3.)

4

I award ADRIA SNOVER, by and through her Guardian ad Litem JORDAN

CALLIHAN the following damages:

_____ Damages are the Judgment of August 15, 2023, or as

modified by the Court of Appeal.


I award ARUNGA GUPTA, M.D., the following damages (Emotional Distress):

$_____

I award ARUNA GUPTA, M.D., the following punitive damages:

$_____


**TOTAL DAMAGES**

$_____


Signed: _____          Date:_____

Hon. David Thompson

5